IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 34032-5-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| EDWARD LEON NELSON, | ) | |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, J. — A jury found Edward Leon Nelson guilty of attempted

first degree robbery with a firearm enhancement and also found him guilty of attempting

to elude a pursuing police vehicle. In a bifurcated trial, the jury found Mr. Nelson not

guilty of unlawful possession of a firearm in the first degree.

Mr. Nelson appeals his conviction for attempted first degree robbery. He argues:

(1) the to-convict instruction omitted the essential nonstatutory element that the victim

have a possessory, ownership or representative interest in the property, (2) sufficient

evidence does not support his conviction for attempted first degree robbery, (3) the

firearm enhancement should be vacated for lack of sufficient evidence and inconsistent

verdicts, and (4) the trial court erred in refusing to instruct the jury on the lesser included

offense of unlawful display of a firearm. He also raises three separate arguments in his statement of additional grounds for review (SAG).

We conclude the trial court's to-convict instruction for attempted first degree robbery lacked an essential element and unconstitutionally relieved the State of its burden of proving each element beyond a reasonable doubt. But we also conclude the error was harmless beyond a reasonable doubt. We otherwise reject Mr. Nelson's arguments and affirm his convictions.

## FACTS

*Background facts*

Myung Meinhold was on duty at the pharmacy counter at a Rite Aid store in Yakima, Washington, on August 15, 2014. She noticed Mr. Nelson, who continually would go to the back of the line as customers came and went. Eventually, he came back with a roll of paper towels and handed Ms. Meinhold a note asking for oxycodone. He then lowered his chin and looked down at his hand. Ms. Meinhold followed his gaze and noticed he was holding a black pistol. She testified the pistol was not pointed at her, but was pointed "towards the roof." Report of Proceedings (RP) at 51. He said, "you're going to get this for me or I'm going to shoot you in ten seconds." RP at 52.

2

Ms. Meinhold told Mr. Nelson she did not have access to the oxycodone and had to get the pharmacist. Ms. Meinhold had the pharmacist, Thomas Newcomer, quickly come to the counter.

Mr. Newcomer glanced at Mr. Nelson's note, and Mr. Nelson asked him for oxy-30s, meaning 30 milligram oxycodone pills. Mr. Newcomer believed the note was some sort of fake prescription. He did not see Mr. Nelson's gun and was not aware that Mr. Nelson even had a gun. He began to walk toward the secured oxycodone, paused, and decided he did not want to supply oxycodone to someone without a valid prescription. He then told Mr. Nelson the store was out of oxycodone.

Mr. Nelson next demanded cash. Only then did Mr. Newcomer realize Mr. Nelson intended to rob the store. Mr. Newcomer said he did not have access to cash, and said he would call the manager. Mr. Nelson immediately fled the store with the paper towels.

The facts leading to Mr. Nelson's arrest are known to the parties and need not be recited because they do not bear on the issues raised on appeal.

*Procedural facts*

By third amended information, the State charged Mr. Nelson with attempted first degree robbery of Ms. Meinhold and/or Mr. Newcomer, attempting to elude a pursuing police vehicle, and first degree unlawful possession of a firearm. Because the third

3

charge required introducing evidence of Mr. Nelson's prior convictions, the parties agreed to bifurcate that charge from the first two.

The State presented the evidence recited above to the jury. The State also sought to present a videotaped interview between Mr. Nelson and law enforcement. Mr. Nelson objected. The trial court excused the jury to hear and consider Mr. Nelson's objections. Mr. Nelson objected to several parts of the video and argued those parts were substantially more prejudicial than probative. After careful review of the transcript, the parties agreed to excise certain portions of the interview so that the jury would not see the unduly prejudicial parts of the interview. The trial court admitted the remainder of the videotape without objection.

After the State rested, the trial court asked Mr. Nelson if he had anything to address. Mr. Nelson responded that he did. First, Mr. Nelson moved to dismiss the portion of the attempted first degree robbery charge that listed Mr. Newcomer as a victim. Mr. Nelson argued there was insufficient evidence that Mr. Newcomer was threatened with the use of force. After the State responded, the trial court granted Mr. Nelson's first motion.

Second, Mr. Nelson moved to dismiss the portion of the attempted first degree robbery charge that listed Ms. Meinhold as a victim. Mr. Nelson argued there was

insufficient evidence that Ms. Meinhold had access to the oxycodone. Mr. Nelson, citing *State v. Richie*[1] and *State v. Latham*,[2] also argued there was insufficient evidence Ms. Meinhold had an ownership, representative, or possessory interest in the oxycodone. The State responded, "That might be a good argument if he had been charged with a completed crime, but he's been charged with the attempt. The legal and factual impossibility is not a defense." RP at 404. Mr. Nelson responded that classifying the crime as an attempt does not negate the State's obligation to prove that Ms. Meinhold had a representative interest in the oxycodone. The trial court concluded that Ms. Meinhold's status as an employee was sufficient for her to have a representative interest in the property under *Richie* and denied Mr. Nelson's second motion.

The trial court directed the bailiff to bring the jury back. Once back, Mr. Nelson rested his case.

The parties then discussed jury instructions. Mr. Nelson's proposed to-convict instruction for attempted first degree robbery required the jury to find that Ms. Meinhold had a possessory, ownership, or representative interest in the property sought to be taken. The trial court, consistent with its earlier ruling, rejected that instruction.

---

[1] 191 Wn. App. 916, 365 P.3d 770 (2015).

[2] 35 Wn. App. 862, 670 P.2d 689 (1983).

Mr. Nelson also requested the trial court to instruct the jury on a lesser included

offense, unlawful display of a firearm. The trial court rejected that instruction, too.

The trial court determined it would give the following to-convict instruction:

> To convict the defendant of the crime of Attempted First Degree
> Robbery in Count 1, each of the following elements of the crime must be
> proved beyond a reasonable doubt:
> (1) That on or about August 15, 2014, the defendant did an act that
> was a substantial step towards unlawfully taking personal property from the
> person or in the presence of another, Myung B. Meinhold;
> (2) That Myung B. Meinhold was an employee of the owner of the
> property;
> (3) That the defendant intended to commit theft of the property;
> (4) That the attempt to take was against the person's will by the
> defendant's use or threatened use of immediate force, violence, or fear of
> injury to that person;
> (5) That force or fear was used by the defendant to obtain or retain
> possession of the property or to prevent or overcome resistance to the taking
> or to prevent knowledge of the taking;
> (6)(a) That in the commission of these acts or in immediate flight
> therefrom the defendant was armed with a deadly weapon; or
> (b) That in the commission of these acts or in the immediate flight
> therefrom the defendant displaced what appeared to be a firearm; and
> (7) That any of these acts occurred in the State of Washington.

Clerk's Papers (CP) at 67. Mr. Nelson objected to the instruction. He also took

exception to the trial court's failure to give his requested instructions, as discussed

previously.

6

The trial court also instructed the jury on the definition of a firearm so the jury could answer the special verdict on count 1—whether Mr. Nelson was armed with a firearm when he committed attempted robbery:

> For purposes of the special verdict as to Count One, the State must prove beyond a reasonable doubt that the defendant was armed with a firearm at the time of the commission of the crime of Attempted First Degree Robbery. A "firearm" is a weapon or device from which a projectile may be fired by an explosive such as gunpowder.

CP at 83.

The jury found Mr. Nelson guilty of attempted first degree robbery and, by special verdict, found that Mr. Nelson was armed with a firearm when he committed the crime. The jury also found Mr. Nelson guilty of attempting to elude a pursuing police vehicle. In the bifurcated trial, the same jury acquitted Mr. Nelson of first degree unlawful possession of a firearm. This appeal timely followed.

## ANALYSIS

1.    OMISSION OF ESSENTIAL ELEMENT FROM THE TO-CONVICT INSTRUCTION

Mr. Nelson argues the trial court's to-convict instruction omitted an essential element of robbery in the first degree, and the omission unconstitutionally relieved the State of its burden to prove an element beyond a reasonable doubt. The State responds

that the to-convict instruction was proper; but even if it was improper, any error was harmless.

This court reviews alleged errors of law in jury instructions de novo. *State v. Fehr*, 185 Wn. App. 505, 514, 341 P.3d 363 (2015). A jury instruction is erroneous if it relieves the State of its burden to prove every element of a crime. *State v. DeRyke*, 149 Wn.2d 906, 912, 73 P.3d 1000 (2003). "A to-convict instruction must contain all essential elements of a crime because it serves as a yardstick by which the jury measures the evidence to determine the defendant's guilt or innocence." *Richie*, 191 Wn. App. at 927. "The fact that another instruction contains the missing essential element will not cure the error caused by the element's absence from the to-convict instruction." *Id.* at 927-28.

In *Richie*, a Walgreens employee who had not begun her shift attempted to prevent the defendant from leaving Walgreens without first paying for two bottles of alcohol. *Id.* at 920. As the defendant passed the employee, the defendant hit the employee with one of the bottles over her head and escaped. *Id.* at 920-21. He later was arrested. *Id.* at 921. The State charged the defendant with first degree robbery. *Id.* The trial court instructed the jury on robbery, but the to-convict instruction did not require the State to prove that the victim had an interest in the stolen bottles of alcohol. *Id.* at 928. The *Richie* court held that Washington's common law of robbery makes "clear that a defendant cannot be

8

convicted of robbery unless the victim has an ownership, representative, or possessory

interest in the property taken." *Id.* at 924. Failure to include this essential nonstatutory

element in a robbery to-convict instruction unconstitutionally relieves the State of its

burden of proving each essential element of the crime beyond a reasonable doubt. *Id.* at

928. The *Richie* court held that the trial court erred because it did not include the

nonstatutory essential element.

Here, as in *Richie*, the trial court did not include the essential nonstatutory element

in the to-convict robbery instruction. The trial court therefore erred.

2. HARMLESS ERROR BEYOND A REASONABLE DOUBT

"[A]n erroneous jury instruction that omits an element of the charged offense or

misstates the law is subject to harmless error analysis." *State v. Thomas*, 150 Wn.2d 821,

844, 83 P.3d 970 (2004). "[A]n instruction that omits an element of the offense does not

*necessarily* render a criminal trial fundamentally unfair or an unreliable vehicle for

determining guilt or innocence." *Neder v. United States*, 527 U.S. 1, 9, 119 S. Ct. 1827,

144 L. Ed. 2d 35 (1999). "The *Neder* test for determining the harmlessness of a

constitutional error is 'whether it appears beyond a reasonable doubt that the error

complained of did not contribute to the verdict obtained.'" *Thomas*, 150 Wn.2d at 845

(internal quotation marks omitted).

9

Here, as in *Richie*, the State argued the employee victim had a sufficient representative capacity over the property. "[A] person with a representative capacity would include a bailee, agent, employee, or other representative of the owner *if* he or she has care, custody, control, or management of the property." *Richie*, 191 Wn. App. at 925 (emphasis added). Because of the qualifier in the above language, an employee does not necessarily have representative capacity over all of an employer's property.

Mr. Nelson argues there is no evidence Ms. Meinhold had care, custody, control, or management of the property. He argues Ms. Meinhold did not have access to the oxycodone that was locked in a safe, and Ms. Meinhold had to ask the pharmacist on duty to get the locked oxycodone. The State responds that Ms. Meinhold is a pharmacy technician and, as a pharmacy technician, she had the right to handle oxycodone. But the State failed to offer any evidence that Ms. Meinhold had such a right. The State did not ask Ms. Meinhold to discuss any of her job duties.

The State also argues Mr. Nelson was charged and convicted of *attempted* first degree robbery. The trial court defined the State's burden for proving an anticipatory offense: "A person commits the crime of Attempted First Degree Robbery when, with intent to commit that crime, he does any act that is a substantial step toward the commission of that crime." CP at 63. A substantial step is an act that is "strongly

10

corroborative" of the actor's criminal purpose. *State v. Luther*, 157 Wn.2d 63, 78, 134

P.3d 205 (2006) (citing *State v. Townsend*, 147 Wn.2d 666, 679, 57 P.3d 255 (2002)).

Here, Mr. Nelson, while holding a black pistol at his side, drew Ms. Meinhold's

attention to the pistol and threatened to kill her unless she gave him oxycodone in 10

seconds. This act alone is "strongly corroborative" of Mr. Nelson's criminal purpose.

Ms. Meinhold said she did not have access to the oxycodone, went to the pharmacist, and

asked him to immediately go to the counter. The pharmacist saw Mr. Nelson's note,

began to get the oxycodone, paused, and then told Mr. Nelson the store was out of the

drug. Had the pharmacist not lied to Mr. Nelson, Mr. Nelson would have obtained the

oxycodone because of his armed threat to kill Ms. Meinhold. This evidence allows a jury

to reach but one conclusion—Mr. Nelson's armed threat to kill Ms. Meinhold was a

substantial step toward committing theft of the oxycodone. We, therefore, conclude that

the trial court's instructional error was harmless beyond a reasonable doubt.

3.    FIREARM ENHANCEMENT

Mr. Nelson next contends this court should vacate the firearm enhancement. He

raises two arguments. He first argues there was insufficient evidence that the gun was

operable, as required by RCW 9.41.010(9). He also argues the jury returned inconsistent

verdicts: a special verdict finding that he was armed with a firearm when he committed

11

the crime of attempted first degree robbery; and, later, a not guilty verdict for first degree unlawful possession of a firearm. We disagree with his arguments.

In a criminal case, the State must provide sufficient evidence to prove each element of the charged offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 316, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). A defendant may raise a challenge to the sufficiency of the evidence for the first time on appeal. *State v. Colquitt*, 133 Wn. App. 789, 795-96, 137 P.3d 892 (2006).

  a. *Sufficient circumstantial evidence the gun was operable*

In evaluating the sufficiency of the evidence, the court must determine whether, when viewing the evidence in the light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt. *State v. Pirtle*, 127 Wn.2d 628, 643, 904 P.2d 245 (1995). A claim of insufficiency admits the truth of the State's evidence and all reasonable inferences from that evidence. *State v. Kintz*, 169 Wn.2d 537, 551, 238 P.3d 470 (2010). Reviewing courts also must defer to the trier of fact "on issues of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence." *Thomas*, 150 Wn.2d at 874-75. This court does not reweigh the evidence and substitute its judgment for that of the jury. *State v. Green*, 94 Wn.2d 216, 221, 616 P.2d

12

628 (1980). For sufficiency of evidence claims, circumstantial and direct evidence carry equal weight. *State v. Varga*, 151 Wn.2d 179, 201, 86 P.3d 139 (2004).

Ms. Meinhold testified the gun appeared to be real. Also, Mr. Nelson directed Ms. Meinhold's attention to the gun he held at his side and threatened he would kill her in 10 seconds unless she gave him oxycodone. Testimony that the gun appeared real, coupled with evidence that the defendant used the gun in committing a crime, is sufficient circumstantial evidence to sustain a jury's finding that the gun was operable. *State v. Tasker*, 193 Wn. App. 575, 594, 373 P.3d 310, *review denied*, 186 Wn.2d 1013, 380 P.3d 496 (2016). Mr. Nelson asks this court to overrule *Tasker*, but fails to explain why the type of circumstantial evidence required by *Tasker* is insufficient. We decline to overrule *Tasker*.

### b.  *Inconsistent verdicts*

"Where the jury's verdict is supported by sufficient evidence from which it could rationally find the defendant guilty beyond a reasonable doubt, we will not reverse on grounds that the guilty verdict is inconsistent with an acquittal on another count." *State v. Ng*, 110 Wn.2d 32, 48, 750 P.2d 632 (1988). As discussed above, sufficient evidence supports the firearm enhancement. We, therefore, will not reverse the inconsistent verdict.

13

4.     LESSER INCLUDED OFFENSE

Mr. Nelson next contends the trial court erred when it denied his request to instruct

the jury on the lesser included offense of unlawful display of a firearm.

A defendant is entitled to an instruction on a lesser included offense if two prongs

are established. *State v. Workman*, 90 Wn.2d 443, 447-48, 584 P.2d 382 (1978). The

legal prong is "each of the elements of the lesser offense must be a necessary element of

the offense charged." *Id.* The factual prong is the evidence in the case must support an

inference that only the lesser crime was committed. *Id.* at 448.

Unlawful display of a firearm is a lesser included offense of attempted first degree

robbery. *Id.* Mr. Nelson therefore has met the legal prong of the *Workman* test.

To establish the factual prong, "evidence must affirmatively establish the

defendant's theory of the case—it is not enough that the jury might disbelieve the

evidence pointing to guilt." *State v. Fernandez-Medina*, 141 Wn.2d 448, 456, 6 P.3d

1150 (2000). This court must view the evidence in the light most favorable to the party

that requested the instruction. *Id.* at 455-56.

A person is guilty of unlawfully displaying a firearm if the person displays a

firearm in a manner that manifests an intent to intimidate another or warranting alarm in

another. *See* RCW 9.41.270(1). Mr. Nelson fails to satisfy the factual prong. We

14

previously held the evidence was insufficient for a trier of fact to find the device was a

firearm. Also, there was no affirmative evidence that Mr. Nelson committed unlawful

display of a firearm to the exclusion of attempted first degree robbery. Here, the

unrefuted evidence is that Mr. Nelson threatened to kill Ms. Meinhold unless she

facilitated his theft of oxycodone. For these reasons, we reject Mr. Nelson's argument.

## SAG ISSUES

### A. JURISDICTION

Mr. Nelson contends that the trial court lacked jurisdiction. Mr. Nelson argues that

jurisdiction is lacking because the elected prosecutor did not respond to a written request

for information sent by Mr. Nelson. We disagree with Mr. Nelson's argument.

The State establishes trial court jurisdiction by presenting evidence that any or all

of the essential elements of the offenses occurred in the state. *State v. L.J.M.*, 129 Wn.2d

386, 392, 918 P.2d 898 (1996); *see also* RCW 9A.04.030(1). This court reviews

jurisdictional questions de novo. *State v. Squally*, 132 Wn.2d 333, 340, 937 P.2d 1069

(1997).

Here, the State sufficiently established the crimes took place in Washington. Ms.

Meinhold testified she lives in Yakima and was working at the Rite Aid store on Nob Hill

Avenue, which is where Mr. Nelson threatened her. Officer Jamie Gonzalez testified he

15

was working in Yakima when he attempted to question Mr. Nelson, and Mr. Nelson then fled in his Mercedes at a high speed and eluded him. Substantial evidence supports the jury's finding (as set forth in the to-convict instructions) that the crimes occurred in the State of Washington. Because that finding is supported by substantial evidence, we conclude the trial court had jurisdiction.

B.     CONFLICT OF INTEREST

Mr. Nelson asserts that his appellate counsel "is a conflict of interest and compelled to lie." SAG at 1. Mr. Nelson makes the same contentions against his trial counsel.

This court considers an issue raised in a SAG only when the SAG adequately informs this court of the nature and occurrence of the alleged error. RAP 10.10(c); *State v. Alvarado*, 164 Wn.2d 556, 569, 192 P.3d 345 (2008). This court is not obligated to search the record in support of claims made in the SAG. *State v. Thompson*, 169 Wn. App. 436, 493, 290 P.3d 996 (2012).

Mr. Nelson does not cite to the record to support his arguments. Mr. Nelson, without elaboration, simply asserts counsel are conflicts of interest. Contrary to his assertion, the record establishes that Mr. Nelson was satisfied with trial counsel. Mr. Nelson personally spoke at sentencing in allocution. His first words were, "[f]irst and

16

foremost, I'd like to thank my attorney, Mr. Dalan, for his time and effort that he put forth on my behalf in this case, his professionalism." RP at 542. Mr. Nelson does not adequately inform this court of the nature and occurrence of his allegations, and we decline to review these alleged errors.

C.    INEFFECTIVE ASSISTANCE OF COUNSEL

Mr. Nelson argues he received ineffective assistance of counsel. Mr. Nelson contends his counsel was ineffective because he "continually coersd [sic] me to waive my 6th Amendment Right." Suppl. SAG at 1. He also asserts his counsel was ineffective for failing to object to the admission of Mr. Nelson's videotaped police interview. We disagree.

1.    *Sixth Amendment rights*

Although the Sixth Amendment protects numerous rights, Mr. Nelson appears to refer by argument only to the right to a speedy trial.

CrR 3.3 generally requires the State to bring an in-custody defendant to trial within 60 days of arraignment; if not, the trial court will dismiss the case with prejudice. CrR 3.3(b). The threshold for a constitutional speedy trial violation, however, is higher than that for a violation of CrR 3.3. *State v. Fladebo*, 113 Wn.2d 388, 393, 779 P.2d 707 (1989); *see also* U.S. CONST. amend. VI; CONST. art. I, § 22. The constitutional right to a

17

speedy trial is not violated by passage of a fixed time but instead the expiration of a reasonable time. *State v. Monson*, 84 Wn. App. 703, 711, 929 P.2d 1186 (1997). This court reviews de novo an allegation that the constitutional rights to speedy trial have been violated. *State v. Iniguez*, 167 Wn.2d 273, 280, 217 P.3d 768 (2009). Because some delay is both necessary and inevitable, the appellant bears the burden of demonstrating that the delay between the initial accusation and the trial was unreasonable and created a presumptively prejudicial delay. *Id.* at 283. If this showing is made, this court next considers several nonexclusive factors in order to determine whether the appellant's constitutional speedy trial rights were violated. *Id.* These factors are: the length and reason for the delay, whether the defendant has asserted his right, and the ways in which the delay caused prejudice. *Barker v. Wingo*, 407 U.S. 514, 530, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972).

Here, Mr. Nelson does not surpass the initial showing that the delay was presumptively prejudicial. Although there was a delay of approximately 17 months between arrest and trial, Mr. Nelson was charged with a very serious offense, as well as attempting to elude a police vehicle after an extensive pursuit. He also faced life imprisonment without the possibility of parole, as this was his third serious violent felony. Given the severity of both the charges and the potential sentence, 17 months is a

reasonable amount of time for Mr. Nelson and the State to prepare for trial. Because Mr. Nelson does not meet his burden in showing a presumptively prejudicial delay, this court need not consider the factor test.

    2.    *Failure to object to videotaped police interview*

Mr. Nelson claims his counsel was ineffective for failing to object to the admission of his videotaped interview with law enforcement.

A criminal defendant has a Sixth Amendment right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 685-86, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). "A claim of ineffective assistance of counsel is an issue of constitutional magnitude that may be considered for the first time on appeal." *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009). The claim is reviewed de novo. *State v. Sutherby*, 165 Wn.2d 870, 883, 204 P.3d 916 (2009). To establish ineffective assistance of counsel, a defendant must prove the following two-pronged test:

> (1) [D]efense counsel's representation was deficient, *i.e.*, it fell below an objective standard of reasonableness based on consideration of all the circumstances; and (2) defense counsel's deficient representation prejudiced the defendant, *i.e.*, there is a reasonable probability that, except for counsel's unprofessional errors, the result of the proceeding would have been different.

*State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995) (citing *State v. Thomas*, 109 Wn.2d 222, 225-26, 743 P.2d 816 (1987)). There is a strong presumption

19

that counsel's performance was reasonable. *State v. Grier*, 171 Wn.2d 17, 42, 246 P.3d 1260 (2011). To rebut this presumption, the defendant bears the burden of establishing that no conceivable legitimate tactic exists to explain counsel's performance. *Id.*

Contrary to Mr. Nelson's assertion, his counsel did object to the videotaped interview. The trial court excused the jury and the parties carefully went through the transcript of the police video to identify the portions that were unduly prejudicial to Mr. Nelson. During the discussion, the State and trial court agreed to excise several prejudicial portions of the video that had little probative value. The record shows that Mr. Nelson's counsel carefully assessed the videotaped interview and successfully prevented the jury from viewing several prejudicial portions. Mr. Nelson does not meet his burden in showing that counsel's performance fell below an objective standard of reasonableness in this instance.

## APPELLATE COSTS

Mr. Nelson requests that this court deny the State an award of appellate costs in the event the State substantially prevails. Mr. Nelson has complied with our June 2016 "General Order" and has satisfactorily shown he lacks the current or likely future ability to pay appellate costs. We therefore grant his request and deny the State an award of appellate costs.

No. 34032-5-III
*State v. Nelson*

Affirmed.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

Lawrence-Berrey, J.

I CONCUR:

Fearing, C.J.

21

No. 34032-5-III

PENNELL, J. (concurring) — I concur in the court's decision affirming Edward Nelson's conviction. I also agree that the trial court's instructions did not accurately recount the standard for whether a robbery victim has representative capacity over a piece of property. I write separately because I disagree that this flaw in the instructions went to an essential element of the crime charged.

Unlike *State v. Richie*, 191 Wn. App. 916, 365 P.3d 770 (2015), this case does not involve a charge of first degree robbery. Instead, Mr. Nelson was charged with *attempted* first degree robbery. Attempted first degree robbery only has two elements: (1) the defendant intended to commit the crime of robbery, and (2) in furtherance of that intent, the defendant took a substantial step toward the commission of the crime of robbery. RCW 9A.28.020(1); *State v. Kier*, 164 Wn.2d 798, 807, 194 P.3d 212 (2008). Neither of these elements requires the State to prove the victim of the attempted robbery had ownership or representative capacity over the property the defendant intended to steal.

Although a victim's ownership or representative capacity is not an element of attempted robbery, it is a nonstatutory element of robbery. *Richie*, 191 Wn. App. at 924. To adequately instruct a jury on attempted robbery, a court must educate the jury on the definition of robbery. Thus, in an attempted robbery case, the court's instructions must include an instruction accurately outlining the elements of robbery.

Washington's pattern jury instructions suggest two methods for issuing criminal attempt instructions. The most straightforward manner is for the court to issue a

to-convict instruction limited to the essential elements of attempt.[1] A separate instruction can then be provided delineating the elements of the crime that was the object of the attempt. An alternative is to provide an instruction setting forth the definition of attempt, and then drafting the to-convict instruction by "using the word 'attempt' along with the elements of the underlying offense." 11A WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 100.01, cmt. at 432 (4th ed. 2016) (WPIC). When the underlying offense has a complex series of elements (as is true for first degree robbery), this latter approach can be convoluted since a to-convict instruction must contain all elements of the crime charged. *See State v. Smith*, 131 Wn.2d 258, 263, 930 P.2d 917 (1997) (the to-convict "instruction must contain all of the elements of the crime because it serves as a 'yardstick' by which the jury measures the evidence to determine guilt or innocence") (quoting *State v. Emmanuel*, 42 Wn.2d 799, 819, 259 P.2d 845 (1953)).

The trial court here opted for the latter, more convoluted approach. The result was a flawed instruction. As written, the instruction misidentified the requisite nature of the defendant's intent. It should have been specified as intent to commit first degree robbery, not theft of property. In addition, the substantial step portion of the instruction was too narrow and failed to reflect a relationship with the defendant's intent. These errors are in

---

[1] 11A WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 100.02, at 434 (4th ed. 2016).

addition to the trial court's incorrect substitution of Myung Meinhold's employee status

for the requirement of representative capacity, as pointed out by the majority.

Assuming the trial court provided a definition of attempt under WPIC 100.01, an

acceptable alternative to the trial court's to-convict instruction would be:

> To convict the defendant of the crime of Attempted First Degree Robbery in Count 1, the following elements must be proved beyond a reasonable doubt:
> (1) On or about August 15, 2014, the defendant did an act which was a substantial step towards the commission of First Degree Robbery;
> (2) That act was done with intent to commit First Degree Robbery; and
> (3) That act occurred in the State of Washington.
>
> The completed crime of First Degree Robbery has the following elements:
> (a) The defendant took property from the person or presence of another, Myung B. Meinhold;
> (b) Myung B. Meinhold owned, was acting as a representative of the owner of, or was in possession of the property taken;
> (c) The defendant intended to commit theft of the property;
> (d) The taking was against Myung B. Meinhold's will by the defendant's use or threatened use of immediate force, violence, or fear of injury to Myung B. Meinhold;
> (e) Force or fear was used by the defendant to obtain or retain possession of the property;
> (f) In the commission of these acts the defendant displayed what appeared to be a firearm or other deadly weapon; and
> (g) The acts occurred in the State of Washington.

*See* 11 WPIC 37.02, at 716-17. In addition, because the State submitted its case under a

theory of representative capacity, a separate instruction should have been given defining

a representative of an owner as a "bailee, agent, employee or other representative of the

3

owner if he or she has care, custody, control, or management of the property." *Richie*, 191 Wn. App. at 925. As pointed out by the majority, not all employees have care, custody, or control over an employer's property. Accordingly, defining representative capacity by employment status is inappropriate.

While the trial court's to-convict instruction was legally inaccurate, reversal is unwarranted. The only instructional error raised by Mr. Nelson pertains to the trial court's substitution of Ms. Meinhold's employee status for the requirement of proof of representative capacity. Because this case only involved an attempt, Ms. Meinhold's lack of actual capacity over the property sought by Mr. Nelson had no bearing on the State's case. Impossibility is not a defense to an attempt. RCW 9A.28.020(2). Regardless of whether Ms. Meinhold actually could have obtained the drugs for Mr. Nelson, the State's evidence showed Mr. Nelson thought she could. By demanding drugs from Ms. Meinhold under threat of deadly force, Mr. Nelson evinced an intent to commit the crime of first degree robbery and took a substantial step toward doing so. The trial court's instructional error was harmless.

_____
Pennell, J.

4