# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 46223-1-II |
| Appellant, | |
| v. | |
| MICHAEL WILLIAM RICHIE, | PUBLISHED OPINION |
| Respondent | |

Maxa, J. — Michael Richie appeals his conviction for first degree robbery. He argues that an implied element of the crime of robbery based on taking property in the presence of a person is that the person have an ownership interest in, a representative interest in, or possession of the property stolen. As a result, he argues that there was insufficient evidence to support a first degree robbery conviction because the State failed to prove this element and that the to-convict jury instruction relieved the State of its burden of proving this element.

We hold that (1) an essential element of first degree robbery is that the victim had an ownership, representative, or possessory interest in the property taken, (2) the State presented sufficient evidence that Richie took property from a person who had a representative interest in the property stolen, and (3) the to-convict instruction improperly relieved the State of its burden of proving the essential element of robbery that the victim had an ownership, representative, or possessory interest in the property taken.[1] Accordingly we reverse Richie's conviction for first degree robbery and remand for a new trial.

---

[1] Richie also argues that (1) the trial court erred by denying Richie's proposed jury instruction and granting the State's misleading instruction regarding this element, (2) the to-convict

FACTS

On September 22, 2013, Richie asked James Beeson to drive him to Walgreens so he could purchase some items. As Beeson was parking, Kersten Gouveia was arriving for her graveyard shift as sales associate. Beeson backed into a parking spot near the entrance, which made Gouveia suspicious of the car.

Although Gouveia was a Walgreens employee, she was not yet on duty and was wearing a coat over her Walgreens badge and shirt. She picked up a beverage to drink before her shift started and proceeded to the front register to pay. While she was at the register, Gouveia watched Richie enter and head to the liquor section. She told the employee at the cash register, Leslie Hammitt, to call a code used to alert employees of a possible theft.

Richie removed two bottles of brandy from the shelf and walked toward the front of the store, holding one bottle by the neck in each hand. As Richie approached, Gouveia took a few steps back from the checkout counter. Richie walked between the checkout counter and Gouveia. Gouveia said to Richie, "[S]ir, you need to pay for that here. Let me help you." Report of Proceedings (RP) at 296. She later testified that she was "giving him good customer service" and trying to help him with the bottles. RP at 302.

When Gouveia reached to help, Richie hit her in the head with one of the bottles. Gouveia then grabbed for the other bottle, and Richie ran out of the front door dragging Gouveia, who was still holding onto the bottle in Richie's hand. Richie eventually broke away from

---

instruction erroneously failed to require that the jury find that the robbery victim was the person named as the victim in the information, and (3) the prosecutor committed misconduct during closing argument. Because we reverse on other grounds, we do not address these arguments.

No. 46223-1-II

Gouveia and drove off in Beeson's car. The State charged Richie with first degree robbery and second degree assault.

The jury found Richie guilty of both charges. The trial court dismissed the assault conviction on double jeopardy grounds and sentenced Richie as a persistent offender to life without the possibility of parole. Richie appeals his conviction for first degree robbery.

ANALYSIS

A.    IMPLIED ESSENTIAL ELEMENT OF ROBBERY

The foundation for Richie's sufficiency of the evidence and jury instruction challenges is his argument that an essential element of first degree robbery is that the victim have an ownership interest in, a representative interest in, or possession of the property stolen. We agree.

The essential elements of the crime are those that the prosecution must prove to sustain a conviction. *State v. Peterson*, 168 Wn.2d 763, 772, 230 P.3d 588 (2010). In determining the essential elements, we first look to the statute. *State v. Mason*, 170 Wn. App. 375, 379, 285 P.3d 154 (2012). RCW 9A.56.190 defines robbery:

> A person commits robbery when he or she unlawfully takes personal property from the person of another or in his or her presence against his or her will by the use or threatened use of immediate force, violence, or fear of injury to that person or his or her property or the person or property of anyone. Such force or fear must be used to obtain or retain possession of the property, or to prevent or overcome resistance to the taking; in either of which cases the degree of force is immaterial.

With regard to taking property from a person's presence, the language of the statute does not require that the person have an ownership, representative, or possessory interest in the property.

However, a criminal statute is not always conclusive regarding the elements of a crime. Courts may find nonstatutory, implied elements. *State v. Miller*, 156 Wn.2d 23, 28, 123 P.3d

3

827 (2005). In *Miller*, the Supreme Court recognized that robbery is an example of a crime with nonstatutory elements that were implied by "a near eternity of common law and the common understanding of robbery." *Id.* For example, the intent to commit theft is an implied, essential element to robbery. *State v. Kjorsvik*, 117 Wn.2d 93, 98, 812 P.2d 86 (1991). Although RCW 9A.56.190 states only that the defendant must unlawfully take property, the pattern to-convict jury instruction for first degree robbery requires both that "the defendant unlawfully took personal property" and "the defendant intended to commit theft of the property." 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 37.02, at 667 (3d ed. 2008) (WPIC); *see also* WPIC 37.50 cmt. at 259 (3d ed. Supp. 2014). Therefore, we look to case law to determine if robbery has a nonstatutory element that the victim have an ownership, representative, or possessory interest in the property stolen.

In 1909, the Supreme Court stated that robbery included an element that "the property must be taken from the person of the owner, or from his immediate presence, or from some person, or from the immediate presence of some person, having control and dominion over it." *State v. Hall*, 54 Wash. 142, 143-44, 102 P. 888 (1909). The court provided an example:

> [I]f A takes the property of B from the immediate presence of C, by force or putting in fear, A is not guilty of the crime of robbery unless C had control and dominion over B's property at the time of the taking.

*Id.* at 144. As a result, the court held that the information alleging robbery was defective because it alleged the taking of property belonging to an entity from the immediate presence of a particular person, without alleging any connection between the person and the property. *Id.* at 143-44.

Division One of this court adopted the requirement of ownership, representative capacity, or possession in *State v. Latham*, 35 Wn. App. 862, 670 P.2d 689 (1983). The court stated that for the taking of property in the presence of a person to constitute a robbery under RCW 9A.56.190, that person must have (1) an ownership interest in the property taken, or (2) some representative capacity with respect to the owner of the property taken, or (3) actual possession of the property taken.[2] *Id.* at 864-65. The court described *Hall* as holding that "the taking of property 'from the immediate presence of' one who did not own the property and had no 'connection' with the property stolen could not constitute robbery." *Id.* at 865.[3]

In *Latham*, the two defendants assaulted a car owner and his passenger as they stood beside the car, and then the defendants stole the car. *Id.* at 863-64. The defendants were charged with and convicted of two counts of robbery, one relating to the owner and one relating to the passenger. *Id.* at 863-64. The court held that the passenger could not be the victim of robbery of the car because he was not the owner of the car, had no authority from the owner to act regarding the car, and was not in possession of the car at the time of the robbery. *Id.* at 866. Accordingly, the court reversed each defendant's robbery conviction relating to the passenger. *Id.*

In *State v. Tvedt*, the Supreme Court approved of the formulation of the robbery element adopted in *Hall* and *Latham*. The court stated:

---

[2] Actual possession does not require a "legally recognizable claim" to the property. *Latham*, 35 Wn. App. at 865. Anyone in possession of the property is deemed the owner with respect to the robbery defendant. *Id.* at 866. For instance, a thief in possession of property can be a robbery victim. *Id.*

[3] The court also noted that there was no material difference between the robbery statute in effect in 1909 and the version of RCW 9A.56.190 then in effect. *Latham*, 35 Wn. App. at 865 n.2.

> Nearly a century ago this court held that a conviction for robbery requires that the person from whom or in whose presence the property is taken have an ownership or representative interest in the property or have dominion and control over it. *State v. Hall*, 54 Wash. 142, 143-44, 102 P. 888 (1909). The court rejected the argument that a conviction could be upheld where "title was not alleged in the person robbed, nor is any connection shown or alleged between the person robbed and the property taken." *Hall*, 54 Wash. at 143. . . . Thus, **in order for a robbery to occur, the person from whom or from whose presence the property is taken must have an ownership, representative, or possessory interest in the property**. *Hall*, 54 Wash. at 143-44; *see also State v. Latham*, 35 Wn. App. 862, 864-66, 670 P.2d 689 (1983).

153 Wn.2d 705, 714, 107 P.3d 728 (2005) (emphasis added).

*Tvedt* involved a double jeopardy challenge to multiple robbery convictions, and the court was required to determine how to define the unit of prosecution for robbery. The court held that the unit of prosecution for robbery is "each separate forcible taking of property from or from the presence of *a person having an ownership, representative, or possessory interest in the property*, against that person's will." *Id.* at 714-15 (emphasis added).

*Hall*, *Latham*, and *Tvedt* all make it clear that a defendant cannot be convicted of robbery unless the victim has an ownership, representative, or possessory interest in the property taken. Accordingly, we hold that this requirement is an essential, implied element of robbery.

B.    SUFFICIENCY OF THE EVIDENCE

Richie argues that the State presented insufficient evidence to prove all essential elements of first degree robbery because the State did not prove that Gouveia had an ownership, representative, or possessory interest in the liquor bottles he stole. We disagree.

When evaluating the sufficiency of evidence for a conviction, the test is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the fact at issue beyond a reasonable doubt. *State v. Homan*, 181 Wn.2d 102, 105, 330

P.3d 182 (2014). We assume the truth of the State's evidence and all reasonable inferences drawn from that evidence when evaluating whether sufficient evidence exists. *Id.* at 106. We also defer to the trier of fact's resolution of conflicting testimony and evaluation of the persuasiveness of the evidence. *Id.*

There is no dispute that Gouveia did not own the liquor bottles that Richie stole. In addition, Gouveia arguably did not have possession of the bottles.[4] The issue is whether Gouveia was acting as the representative of the property's owner, Walgreens, and therefore had "control" over the property at the time of the theft.

The court in *Latham* elaborated on what it means to have a representative interest in property. The court stated that a person with a representative capacity would include a bailee, agent, employee, or other representative of the owner if he or she has care, custody, control, or management of the property. *Latham*, 35 Wn. App. at 865; *see also State v. Rupe*, 101 Wn.2d 664, 693, 683 P.2d 571 (1984) (bank teller could be a robbery victim because she had responsibility for the money in her till and control over it); *State v. Blewitt*, 37 Wn. App. 397, 399, 680 P.2d 457 (1984) (stealing property in the presence of the owner's employee can support a robbery conviction because the employee had the implied responsibility of exercising control over the property).

---

[4] The testimony of both Gouveia and Richie establish that she never obtained exclusive possession of a bottle. The State argues that Gouveia had possession when she grabbed onto the bottle at the same time Richie was holding it and was dragged out of the store, but cites no authority for this proposition. Because we find sufficient evidence that Gouveia had a representative interest in the bottle, we do not address this issue.

Here, the State presented evidence that Gouveia was a Walgreens employee. The evidence also showed that Gouveia was acting in her capacity as a Walgreens employee when she tried to stop the theft. She testified that she tried to find the manager when she first arrived to alert him to Richie's suspicious activity. She then instructed the cashier to alert the other employees of a possible theft. And Gouveia testified that she was attempting to give customer service when she grabbed for the bottles.

Finally, the evidence showed that Walgreens believed that Gouveia was acting in her capacity as an employee. Walgreens fired Gouveia after this incident because she violated company policy that prohibited employees from attempting to stop shoplifters.

Richie argues that Gouveia was not acting in a representative capacity because she was not on duty at the time of the incident, her Walgreens shirt and identification were not visible, and she was standing in line like any other customer. However, a rational jury could have found that regardless of whether Gouveia was on duty, she was acting in her employer's interests at the time of the robbery. And the cases do not require that the defendant actually know that the victim is acting in a representative capacity at the time of the robbery.

Viewing the evidence in light most favorable to the State, the jury could have found beyond a reasonable doubt that at the time of the robbery Gouveia was acting in a representative capacity on behalf of Walgreens at the time of this incident. Accordingly, we hold that the State presented sufficient evidence of the implied element of first degree robbery – that the victim have an ownership, representative, or possessory interest in the property taken.

C.    TO-CONVICT JURY INSTRUCTION

Richie argues that the to-convict jury instruction relieved the State of its burden of proving the essential element of robbery that the property was taken from or in the presence of a person having an ownership, representative, or possessory interest in the property.  We agree.

    1.    Failure to Object in the Trial Court

The State argues that this court should not address Richie's challenge to the to-convict instruction because he did not object to that instruction at trial.  We disagree.

Under RAP 2.5(a)(3), we will review an issue raised for the first time on appeal if it involves a "manifest error affecting a constitutional right."  The Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution require that the jury be instructed on all elements of a charged crime.  *State v. Chino*, 117 Wn. App. 531, 538, 72 P.3d 256 (2003).  Jury instructions that omit essential elements of a charged crime violate due process.  *State v. Hassan*, 184 Wn. App. 140, 148, 336 P.3d 99 (2014).  Therefore, the omission of an element of a charged crime is a manifest error affecting a constitutional right that can be considered for the first time on appeal.  *State v. Mills*, 154 Wn.2d 1, 6, 109 P.3d 415 (2005).

We consider Richie's argument that the to-convict instruction did not contain all the elements of robbery even though he did not object at trial.

    2.    Omission of Implied Element

"We review alleged errors of law in jury instructions de novo."  *State v. Fehr*, 185 Wn. App. 505, 514, 341 P.3d 363 (2015).  A jury instruction is erroneous if it relieves the State of its burden to prove every element of a crime.  *State v. DeRyke*, 149 Wn.2d 906, 912, 73 P.3d 1000 (2003).  A to-convict instruction must contain all essential elements of a crime because it serves

as a yardstick by which the jury measures the evidence to determine the defendant's guilt or

innocence. *Id.* at 910. The fact that another instruction contains the missing essential element

will not cure the error caused by the element's absence from the to-convict instruction.[5] *Id.*

The trial court's to-convict instruction for first degree robbery tracked the language of

WPIC 37.02. The trial court's instruction states in part:

> To convict the defendant of the crime of Robbery in the First Degree, each of the following six elements of the crime must be proved beyond a reasonable doubt:
>
> (1)  That on or about the 22nd day of September, 2013, the defendant unlawfully took personal property from the person or in the presence of another;
> (2)  That the defendant intended to commit theft of the property;
> (3)  That the taking was against the person's will by the defendant's use or threatened use of immediate force, violence or fear of injury to that person, or to the person or property of another;
> (4)  That the force or fear was used by the defendant to obtain or retain possession of the property or to prevent or overcome resistance to the taking;
> (5)  That in the commission of these acts or in the immediate flight therefrom the defendant inflicted bodily injury;
> (6)  That any of these acts occurred in the State of Washington.

Clerk's Papers (CP) 50 (Inst. 6).

As discussed above, whether the victim of a robbery has an ownership, representative, or

possessory interest in the property taken is an essential, implied element of first degree robbery.

This essential element is absent from the trial court's to-convict instruction. Therefore, the trial

court's instruction relieved the State of its burden to prove every element of the crime.

We hold that the to-convict instruction on first degree robbery was erroneous because it

did not include an essential element of the crime of first degree robbery – the requirement that

---

[5] Richie did propose an instruction that attempted to address the requirement that that the property was taken from or in the presence of a person having an ownership, representative, or possessory interest in the property. The trial court refused to give this instruction.

the victim have an ownership, representative, or possessory interest in the property taken.[6] This element also is absent from WPIC 37.02. But the fact that the trial court's instruction was patterned after a Washington pattern instruction does not change our conclusion. *See State v. Cronin*, 142 Wn.2d 568, 579, 14 P.3d 752 (2000).

       3.    Harmless Error

Under certain circumstances, the omission of an essential element of a crime from the to-convict jury instructions may be subject to a harmless error analysis. *See State v. Schaler*, 169 Wn.2d 274, 288, 236 P.3d 858 (2010). Such an omission is harmless when it is clear that it did not contribute to the verdict; for example, when uncontroverted evidence supports the omitted element. *Id*. However, "error is not harmless when the evidence and instructions leave it ambiguous as to whether the jury could have convicted on improper grounds." *Id*.

Here, the to-convict instruction omitted the essential element that the victim have an ownership, representative or possessory interest in the stolen property. And the evidence was ambiguous on this issue. As we held above, the evidence was sufficient to find that Gouveia was acting as a representative of Walgreens. However, there also was evidence that Gouveia was not on duty and should be treated like a customer rather than an employee. As a result, we cannot know whether the jury determined that Gouveia had a representative interest in the stolen

---

[6] Richie also argues that the to-convict instruction was erroneous because the information named Gouveia as the robbery victim but the to-convict instruction did not. This omission may be problematic because there were two possible victims – Gouveia and the cashier – and Richie was charged with robbing only Gouveia. Therefore, the to-convict instruction may have allowed a conviction of an uncharged crime. However, because we reverse on other grounds, we do not address this issue.

property before finding Richie guilty of robbery. This means that the instructional error was not harmless.

We hold that the to-convict instruction improperly omitted an essential element of the crime of burglary – that the victim have an ownership, representative or possessory interest in the stolen property. And we hold that this error was not harmless. Accordingly, we reverse Richie's first degree robbery conviction and remand for a new trial.[7]

MAXA, J.

We concur:

BJORGEN, A.C.J.

LEE, J.

---

[7] The jury also convicted Richie of second degree assault, but the trial court dismissed that conviction on double jeopardy grounds. Because we are reversing the first degree robbery conviction, a question exists as to the status of the assault conviction. *See State v. Turner*, 169 Wn.2d 448, 466, 238 P.3d 461 (2010). But neither party has briefed this issue, and therefore we direct the trial court to address this issue on remand.