IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 34498-3-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| MANUEL STEVEN ABRAHAMSON, | ) | |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, J. — Manuel Steven Abrahamson appeals his conviction for

theft of a motor vehicle. He argues: (1) the trial court violated his right to a speedy trial

when it granted a continuance agreed to by both trial counsel but over Mr. Abrahamson's

personal objection, and (2) the to-convict instruction omitted an essential element, the

omission of which was a structural error not subject to harmless error analysis. Mr.

Abrahamson also raises various arguments in his statement of additional grounds for

review (SAG). We disagree with his arguments and affirm, but decline to award the State

appellate costs.

FACTS

On January 18, 2016, Debra Purvis was visiting her daughter and daughter-in-law in Spokane, Washington. That evening, she realized she had misplaced her car keys. She and her family began to search for her keys in the parking lot where she had parked her car. While searching, two of the women interacted briefly with Manuel Steven Abrahamson. He appeared to be drunk. None of the family members knew him. Several minutes later, the family saw the car being driven away. They quickly contacted police and neighbors. Less than 10 minutes later, the driver returned the car to the parking lot but in a different location. The family and neighbors found Mr. Abrahamson in the car and detained him for police.

Mr. Abrahamson had sustained an injury during the event, so police took him to the hospital. Testing revealed that Mr. Abrahamson had a blood alcohol concentration of 0.27 percent and had methamphetamine in his system.

On February 2, 2016, the State arraigned Mr. Abrahamson on the charge of theft of a motor vehicle. The trial court set a trial date for March 28. On March 17, the State moved the court for a trial continuance. In support for its request, the State's attorney cited his prescheduled vacation (March 28-31), defense counsel's prescheduled vacation (March 30-April 6), and several prescheduled trials for the week of April 4. Both counsel

2

agreed to the continuance, Mr. Abrahamson objected, and the trial court reset the trial for April 11. For reasons not reflected in the record on appeal, trial actually commenced on April 26.[1]

On April 26, before jurors were first brought into the courtroom, the trial court realized that Ms. Purvis's husband was in the jury pool. The State immediately challenged him for cause, and the trial court struck him from the jury pool prior to him ever entering the courtroom. Later in voir dire, the trial court asked the venire jurors if anyone knew about the case or knew the defendant or the victim. None of them did.

During opening statements, Mr. Abrahamson said he did not dispute that he drove Ms. Purvis's car. He told the jury what he disputed was whether he *intended* to deprive Ms. Purvis of her car, given his level of intoxication.

Prior to closing arguments, the trial court reviewed its proposed jury instructions with the parties. The trial court asked Mr. Abrahamson if he had any objection to the to-convict instruction. Mr. Abrahamson responded that he did not. The to-convict instruction read:

---

[1] Mr. Abrahamson mentions this 15 day delay in his briefing, notes that the record is inadequate for explaining the delay, but does not argue any trial court error based on this 15 day delay.

3

To convict the defendant of the crime of theft of a motor vehicle, each of the following three elements of the crime must be proved beyond a reasonable doubt:

(1)     That on or about January 18th, 2016 the defendant wrongfully obtained or exerted unauthorized control over a motor vehicle;

(2)     That the defendant intended to deprive the other person of the motor vehicle; and

(3)     That this act occurred in the State of Washington.

Clerk's Papers (CP) at 27.

After closing arguments, the jury deliberated and returned a verdict of guilty. The trial court sentenced Mr. Abrahamson to 45 months' confinement. He timely appealed.

ANALYSIS

CONTINUANCE

Mr. Abrahamson contends the trial court violated his speedy trial rights when it granted the agreed continuance over his personal objection. We disagree.

We review alleged violations of the CrR 3.3 speedy trial rule de novo. *State v. Kenyon*, 167 Wn.2d 130, 135, 216 P.3d 1024 (2009). A defendant's right to a speedy trial is protected by the both the federal and state constitutions and court rule. The constitutional right to a speedy trial is broad. It is generally only implicated when a long period of time passes between the filing of charges and trial. *See State v. Iniguez*, 167 Wn.2d 273, 217 P.3d 768 (2009). Court rules are more specific and set forth standards

4

for adjudicating cases under fairly short time frames. The court rule applicable to Mr. Abrahamson's case is CrR 3.3.

Here, the State arraigned Mr. Abrahamson on February 2, 2016. Because he was in custody prior to trial, Mr. Abrahamson's time for speedy trial would typically expire 60 days after the day of arraignment. CrR 3.3(b)(1)(i). But that day was April 2, a Saturday. Weekends and holidays are excluded for speedy trial purposes. *See* CrR 8.1; CR 6.1(a). We therefore calculate his speedy trial expiration date as April 4. The trial court's initial March 28 trial date was well within the speedy trial deadline.

CrR 3.3(e) excludes various periods when calculating speedy trial. CrR 3.3(e)(3) excludes delay attributable to a trial court's grant of a continuance made pursuant to CrR 3.3(f). CrR 3.3(f)(2) authorizes the trial court to grant a continuance on a party's motion when such continuance is required in the administration of justice and the defendant will not be prejudiced in the presentation of his defense.

The decision to grant or deny a trial continuance rests within the sound discretion of the trial court. *Kenyon*, 167 Wn.2d at 135. We will not disturb a trial court's decision on that issue unless there is a clear showing the trial court's decision was manifestly unreasonable, or that it based its decision on untenable grounds or reasons. *Id.* The prescheduled vacation of counsel or counsel's unavailability due to being in trial on

5

another matter are adequate bases to justify a continuance. *State v. Jones*, 117 Wn. App. 721, 729-30, 72 P.3d 1110 (2003).

Here, the trial court did not abuse its discretion when it granted one short trial continuance so both counsel could take preplanned vacations. Mr. Abrahamson contends the State could have assigned another attorney to try the case. We agree that this was an option. But simply because this was an option does not render the trial court's decision to grant the continuance an abuse of discretion.

Mr. Abrahamson also contends he was prejudiced, so that the trial court should not have granted a continuance under CrR 3.3(f). He argues he was prejudiced because he had to choose between his attorney and waiving his right to a speedy trial. But Mr. Abrahamson failed to argue prejudice to the trial court. He therefore failed to preserve this issue for review. *State v. O'Hara*, 167 Wn.2d 91, 97, 217 P.3d 756 (2009). But even if he did preserve the issue of prejudice, Mr. Abrahamson fails to explain how he was prejudiced as contemplated by the rule, which contemplates prejudice "in the presentation of his or her defense." CrR 3.3(f)(2). We glean nothing from the record that suggests the short continuance prejudiced Mr. Abrahamson's presentation of his defense.

Mr. Abrahamson also relies on authorities that have found an abuse of discretion for granting trial continuances. The present case is readily distinguishable on the ground

6

that here, the trial court granted one short trial continuance to accommodate counsel's preplanned vacations; whereas in those cases, the trial court granted numerous continuances, including one or more continuances without an adequate factual basis. *Kenyon*, 167 Wn.2d 130 (at least eight continuances, one without an adequate factual basis, and defendant made three separate motions to dismiss prior to trial); *State v. Saunders*, 153 Wn. App. 209, 220 P.3d 1238 (2009) (at least five continuances, three without adequate factual bases, and defendant made one motion to dismiss prior to trial).

JURY INSTRUCTION ERROR

Mr. Abrahamson contends the trial court erred in giving a to-convict jury instruction that did not contain all of the essential elements of theft, and that this error constitutes structural error. We disagree.

We review alleged errors of law in jury instructions de novo. *State v. Fehr*, 185 Wn. App. 505, 514, 341 P.3d 363 (2015). A jury instruction is erroneous if it relieves the State of its burden to prove every element of a crime. *State v. DeRyke*, 149 Wn.2d 906, 912, 73 P.3d 1000 (2003). "A to-convict instruction must contain all essential elements of a crime because it serves as a yardstick by which the jury measures the evidence to determine the defendant's guilt or innocence." *State v. Richie*, 191 Wn. App. 916, 927, 365 P.3d 770 (2015). "The fact that another instruction contains the missing essential

7

element will not cure the error caused by the element's absence from the to-convict instruction." *Id.* at 927-28. "[T]he omission of an element of a charged crime is a manifest error affecting a constitutional right that can be considered for the first time on appeal." *Id.* at 927.

A defendant does not receive a fair trial if "the jury must guess at the meaning of an essential element of a crime or if the jury might assume that an essential element need not be proved." *State v. Smith*, 131 Wn.2d 258, 263, 930 P.2d 917 (1997). If a jury instruction is erroneous but does not relieve the State of its burden to prove every essential element, then the error is harmless. *State v. Brown*, 147 Wn.2d 330, 339-40, 58 P.3d 889 (2002).

A person is guilty of theft of a motor vehicle if he or she commits theft of a motor vehicle. RCW 9A.56.065. To convict a person of a crime involving theft the State must show that the defendant either (1) wrongfully obtained or exerted "unauthorized control over the property or services of another or the value thereof," (2) obtained "control over the property or services of another" by "color or aid of deception," or (3) appropriated "lost or misdelivered property or services of another." RCW 9A.56.020(1)(a)-(c).

The pattern instruction used by the parties and trial court at the time mirrored the language now challenged. The instruction read:

> To convict the defendant of the crime of theft of a motor vehicle, each of the following three elements of the crime must be proved beyond a reasonable doubt:
> (1)     That on or about January 18th, 2016 the defendant wrongfully obtained or exerted unauthorized control over a motor vehicle;
> (2)     That the defendant intended to deprive the other person of the motor vehicle; and
> (3)     That this act occurred in the State of Washington.

CP at 27.

Mr. Abrahamson contends that the error appears in element one of this instruction, because a jury could have decided that he exerted unauthorized control over his own motor vehicle. This is a strained reading of that element, and it would ignore the language of the instruction as a whole. When read in context, it is clear from the second element that the motor vehicle must have belonged to another. Otherwise, a defendant could not deprive the other person of the motor vehicle. A jury would not need to guess at an essential element of theft when reading this to-convict instruction.

Nevertheless, an omission of an essential element of a crime from the to-convict jury instruction may be subject to a harmless error analysis. *Richie*, 191 Wn. App. at 929. "Such an omission is harmless when it is clear that it did not contribute to the verdict, for

example, when uncontroverted evidence supports the omitted element." *Id.*[2] Here, error, if any, would be harmless.

The evidence was uncontroverted that the car belonged to Ms. Purvis. Mr. Abrahamson conceded as early as his opening statement that he drove Ms. Purvis's car, and his only defense was that he lacked the requisite intent, because of his intoxication. We conclude there was no instructional error. Nevertheless, error, if any, would have been harmless beyond a reasonable doubt.

SAG ISSUE I: CONTINUANCE

Mr. Abrahamson reiterates that he did not agree to the trial continuance. We previously addressed this issue.

SAG ISSUE II: JURY POOL BIAS

Mr. Abrahamson next contends his jury was biased because Ms. Purvis's husband was in the initial jury pool. The court brought this to the attention of the parties before commencing voir dire. The State immediately challenged Mr. Purvis for cause, and the trial court struck Mr. Purvis from the jury.

---

[2] Mr. Abrahamson argues for the first time in his reply brief that this court should depart from precedent and treat an error in the to-convict instruction as structural. His argument comes too late for this court to consider it. *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992).

Later, the trial court made a sufficient record that Mr. Purvis did not taint the jury

pool. The trial court asked the jury pool whether any venire juror had heard of the case or

knew the victim or the defendant. None did.

SAG ISSUE III: OMNIBUS HEARING

Mr. Abrahamson contends he had a right to an omnibus hearing. We disagree.

CrR 4.5 contemplates the scheduling of an omnibus hearing so that parties can

discuss pretrial matters and enter an order so the case can proceed expeditiously and in an

organized manner. Although CrR 4.5 contemplates an omnibus hearing and entry of an

order, there is nothing in the rule nor decisional authority that contemplates reversal or

dismissal of charges in the event an omnibus hearing does not occur.

SAG ISSUE IV: ATTORNEY CLIENT COMMUNICATIONS

Mr. Abrahamson contends his trial counsel ignored communications and refused to

give him copies of discovery. His contentions rely on information outside the trial record.

If Mr. Abrahamson wishes to raise these contentions, he must do so in the form of a

personal restraint petition. *State v. Grier*, 171 Wn.2d 17, 29, 246 P.3d 1260 (2011).

APPELLATE COSTS

Mr. Abrahamson requests that we not award the State appellate costs should it

substantially prevail. An appellate court has discretion to award a prevailing party

appellate costs. RAP 14.2. This includes requiring a convicted defendant to pay

appellate costs. RCW 10.73.160(1).

"A 'prevailing party' is any party that receives some judgment in its favor. If

neither party completely prevails, the court must decide which, if either, substantially

prevailed." *Guillen v. Contreras*, 169 Wn.2d 769, 775, 238 P.3d 1168 (2010) (citations

omitted). Generally, the party that substantially prevails on review will be awarded

appellate costs, unless the court directs otherwise in its decision terminating review. RAP

14.2. Here, the State has fully prevailed on appeal.

An appellate court's authority to award costs is "permissive," and a court may,

pursuant to RAP 14.2, decline to award costs at all. *See State v. Nolan*, 141 Wn.2d 620,

628, 8 P.3d 300 (2000).

On June 10, 2016, this court issued a "General Order" regarding defendants'

requests to deny cost awards when the State substantially prevails on appeal. It directs

defendants who want this court to exercise its discretion not to impose appellate costs to

make their request, together with citations to legal authority and references to relevant

parts of the record, either in their opening brief or in a motion pursuant to RAP 17. Mr.

Abrahamson asked this court not to impose appellate costs in his briefing.

12

If inability to pay is a factor alleged to support the defendant's request, the General Order requires defendants to include in the appellate record the clerk's papers, exhibits, and the reports of proceedings relating to the trial court's determination of indigency and ability to pay discretionary legal financial obligations (LFOs). The General Order also requires defendants to file a report as to continued indigency with this court no later than 60 days after they file their opening briefs. The report provides needed detail so this court can thoughtfully consider whether a defendant lacks the current or likely future ability to pay appellate costs. A prior determination that a defendant is indigent for purposes of affording an attorney on appeal is not dispositive of a defendant's ability to pay the much lesser appellate costs.

Mr. Abrahamson designated the transcript of his sentencing hearing only. But he failed to file a report as to continued indigency. Nevertheless, the record establishes that Mr. Abrahamson was homeless at the time of his arrest, was on food stamps, has numerous felonies and misdemeanors, and likely has substantial unpaid court costs. Based on this record, we grant Mr. Abrahamson's request and deny the State an award of appellate costs.

No. 34498-3-III
*State v. Abrahamson*


Affirmed.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

Lawrence-Berrey, J.

WE CONCUR:

Fearing, C.J.

Korsmo, J.

14