# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 48869-8-II |
| Respondent, | |
| v. | |
| MICHAEL WILLIAM RICHIE, | UNPUBLISHED OPINION |
| Appellant. | |

SUTTON, J. — Michael William Richie appeals his jury trial conviction for second degree assault. He argues that the State engaged in prosecutorial misconduct "by repeatedly disparaging defense counsel and impugning his integrity during closing argument." Br. of Appellant at 8. In his pro se statement of additional grounds for review[1] (SAG), Richie further contends that the State's improper legal argument increased the prejudice caused by the use of improper jury instructions related to a dismissed first degree robbery conviction and that the trial court erred when it overruled his objections to this argument and denied his motion for mistrial based on this argument. We affirm.[2]

---

[1] RAP 10.10.

[2] Richie also asks us to decline to impose appellate costs. Under RAP 14.2, a commissioner or clerk of this court has the ability to determine whether appellate costs should be imposed based on the appellant's ability to pay and prior determinations regarding indigency. If the State decides to pursue costs for this appeal, a commissioner can make a determination as to whether costs should be imposed. Accordingly, we do not address this issue further.

FACTS

I. BACKGROUND

The facts of this case are succinctly stated in our opinion from Richie's first appeal:

On September 22, 2013, Richie asked James Beeson to drive him to Walgreens so he could purchase some items. As Beeson was parking, Kersten Gouveia was arriving for her graveyard shift as sales associate. Beeson backed into a parking spot near the entrance, which made Gouveia suspicious of the car.

Although Gouveia was a Walgreens employee, she was not yet on duty and was wearing a coat over her Walgreens badge and shirt. She picked up a beverage to drink before her shift started and proceeded to the front register to pay. While she was at the register, Gouveia watched Richie enter and head to the liquor section. She told the employee at the cash register, Leslie Hammitt, to call a code used to alert employees of a possible theft.

Richie removed two bottles of brandy from the shelf and walked toward the front of the store, holding one bottle by the neck in each hand. As Richie approached, Gouveia took a few steps back from the checkout counter. Richie walked between the checkout counter and Gouveia. Gouveia said to Richie, "[S]ir, you need to pay for that here. Let me help you." Report of Proceedings (RP) at 296. She later testified that she was "giving him good customer service" and trying to help him with the bottles. RP at 302.

When Gouveia reached to help, Richie hit her in the head with one of the bottles. Gouveia then grabbed for the other bottle, and Richie ran out of the front door dragging Gouveia, who was still holding onto the bottle in Richie's hand. Richie eventually broke away from Gouveia and drove off in Beeson's car.

*State v. Richie*, 191 Wn. App. 916, 920-21, 365 P.3d 770 (2015).

II. PROCEDURE

A. TRIAL

The State charged Richie with first degree robbery and second degree assault. The case proceeded to a jury trial.

1. JURY INSTRUCTIONS

After both parties rested, defense counsel proposed the following jury instruction:

A person must have an ownership interest in the property taken, or some representative capacity with respect to the owner of the property taken, or actual possession of the property taken, for the taking of the property to constitute a robbery.

Suppl. Clerk's Papers (CP) at 68.

The trial court declined to give this proposed instruction. Instead, it ruled that it would give the State's instruction because it was a "more neutral statement as to ownership." 6 RP (Mar. 27, 2014) at 524. The trial court also stated that the State's instruction still "allow[ed] the defense to argue its theory of the case without penalty." 6 RP (Mar. 27, 2014) at 524.

The trial court gave the following instruction:

Theft means to wrongfully obtain or exert unauthorized control over the property or services of another, or the value thereof, with intent to deprive that person of such property or services. Ownership of the property taken must be in some person other than the person or persons who commit the theft.

Suppl. CP at 79 (Jury Instruction No. 8).

2. CLOSING ARGUMENTS

In closing argument, defense counsel argued that to prove the robbery charge, the State had to prove beyond a reasonable doubt that Gouveia had a "proprietary or superior interest in the property" at issue. 6 RP (Mar. 27, 2014) at 557. Defense counsel further argued that the State failed to carry this burden because there was no evidence that Gouveia was on duty and what her duties were with regard to the store if she was not working.

Defense counsel admitted that Richie "did assault" Gouveia, but he argued that Richie was just trying to escape and "never intended any harm to befall her." 6 RP (Mar. 27, 2014) at 565. He also argued that there was no testimony supporting the second degree assault charge because

3

they did not hear any medical evidence about her injuries. He argued that if Richie was "guilty of anything, he's guilty of an assault in the third degree." 6 RP (Mar. 27, 2014) at 567.

In rebuttal, the State repeatedly argued that the words "proprietary" and "superior" were not part of the jury instructions or part of the law. 6 RP (Mar. 27, 2014) at 568, 569-70, 573-74. It further argued that defense counsel was asking the jury to "ignore the law" and read these extraneous terms into the jury instructions. 6 RP (Mar. 27, 2014) at 568. The State argued that the jury should instead rely on the court's jury instructions. Defense counsel objected to this argument several times, asserting that the State's argument was a "mischaracterization" or "misstatement of the law;" he did not assert that this argument denigrated defense counsel. 6 RP at 568, 570. The trial court "noted" the objection for the record and referred the jury to its written instructions. 6 RP at 568-69, 570-71.

Richie moved for a mistrial based on the State's argument and objections to his closing argument. He asserted that the State's argument and objections misstated the law and noted that the trial court had ruled that Richie could argue his theory that the State had to prove a proprietary or superior interest in the property. The trial court denied the motion for mistrial.

The jury found Richie guilty of first degree robbery and second degree assault. The trial court dismissed the assault charge "on the basis of double jeopardy." CP at 10.

B. FIRST APPEAL AND REMAND

Richie appealed the first degree robbery conviction. *See State v. Richie*, 191 Wn. App. 916, 365 P.3d 770, 778 (2015). In a published opinion, we reversed Richie's first degree robbery and remanded the matter for further proceedings. *Richie*, 191 Wn. App. at 920. We held, in part, that the to-convict instruction improperly relieved the State of its burden of proving the essential

4

element of robbery—that the victim had an ownership, representative, or possessory interest in the property taken.[3] *Richie*, 191 Wn. App. at 928, 930.

We further stated,

The jury also convicted Richie of second degree assault, but the trial court dismissed that conviction on double jeopardy grounds. Because we are reversing the first degree robbery conviction, a question exists as to the status of the assault conviction. But neither party has briefed this issue, and therefore we direct the trial court to address this issue on remand.

*Richie*, 191 Wn. App. at 930 n.7 (citation omitted).

On remand, the trial court dismissed the robbery charge without prejudice and, at the State's request, reinstated the second degree assault conviction. Richie now appeals his second degree assault conviction.

ANALYSIS

I. PROSECUTORIAL MISCONDUCT

Richie argues that the State engaged in prosecutorial misconduct by disparaging and impugning defense counsel during closing argument when it argued that defense counsel was disregarding the law and asking the jury to ignore the law and read additional requirements into the jury instructions. He contends that by impugning defense counsel in this manner, the State deprived him of his right to effective assistance of counsel and that this was even more egregious because the trial court had ruled that defense counsel could present this argument. We hold that even if we presume that Richie's objection was sufficient, Richie fails to establish that the State's argument was improper in this regard.

---

[3] Because we reversed on this ground, we declined to reach Richie's "prosecutor[ial] misconduct during closing argument" issue. *Richie*, 191 Wn. App. at 920 n.1.

To prevail on this prosecutorial misconduct claim, Richie must establish "that the prosecutor's conduct was both improper and prejudicial." *State v. Emery*, 174 Wn.2d 741, 756, 278 P.3d 653 (2012). We review the prosecutor's conduct and the potential prejudice by examining it "in the full trial context, including the evidence presented, 'the context of the total argument, the issues in the case, the evidence addressed in the argument, and the instructions given to the jury.'" *State v. Monday*, 171 Wn.2d 667, 675, 257 P.3d 551 (2011) (internal quotation marks omitted) (quoting *State v. McKenzie*, 157 Wn.2d 44, 52, 134 P.3d 221 (2006)).

Richie is correct that a prosecutor "must not impugn the role or integrity of defense counsel." *State v. Lindsay*, 180 Wn.2d 423, 431-32, 326 P.3d 125 (2014). But the State's argument during closing did not disparage defense counsel's role or impugn his integrity. The State's argument merely referred the jury to the trial court's instructions and emphasized that defense counsel's argument did not track those instructions. Because the State did not impugn defense counsel, Richie fails to show improper conduct and the prosecutorial misconduct argument fails.

## II. SAG ARGUMENTS

In his SAG, Richie first contends that *"[t]he prejudice resulting from the instructional error* was magnified by the prosecutor's improper statement of the law and denigration of defense counsel during closing argument."[4] SAG at 1. Richie's focus is on how the State's closing argument potentially increased the prejudice caused by the jury instructions that we previously held misstated the law as to the first degree robbery charge. Richie does not state, nor is it apparent, how the legal errors in the State's argument related to the now-dismissed first degree robbery

---

[4] To the extent Richie's SAG argument reiterates appellate counsel's argument, we have addressed that issue above.

charge affected his remaining second degree assault charge. At no time did Richie argue that the jury instructions related to the second degree assault charge were incorrect. Because the State's misstatement of the law related to the first degree robbery charge and was not relevant to the second degree assault charge, we hold that Richie is not entitled to relief on this ground.

Richie next contends that the trial court erred when it failed to sustain his objections to the State's closing argument or grant his motion for mistrial based on the State's improper closing argument. Richie's objections during closing argument and his arguments in his motion for mistrial were limited to whether the State's closing argument was a proper statement of the law related to the first degree robbery charge; he did not argue that the State's argument denigrated defense counsel. Thus, to the extent Richie is arguing that the trial court should have sustained an objection or granted a mistrial based on the State's denigration of defense counsel, he has waived this argument because he did not object on that ground. RAP 2.5(a). And to the extent Richie is arguing that the trial court should have sustained his objections or granted a mistrial based on his assertion that the State had misstated the law related to first degree robbery, Richie cannot show prejudice as to his second degree assault conviction because these arguments did not relate to that charge.[5, 6]

---

[5] Unlike the disparaging defense counsel claims, which could have potentially harmed defense counsel's credibility as a whole, any error in misstating the law would have been limited entirely to the first degree robbery charge.

[6] "A trial court's denial of a motion for mistrial 'will be overturned only when there is a substantial likelihood the prejudice affected the jury's verdict.'" *State v. Greiff*, 141 Wn.2d 910, 921, 10 P.3d 390 (2000) (internal quotation marks omitted) (quoting *State v. Russell*, 125 Wn.2d 24, 85, 882 P.2d 747 (1994).

No. 48869-8-II

Accordingly, because Richie does not establish prosecutorial misconduct and his SAG contentions fail, we affirm his conviction.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

SUTTON, J.

We concur:

MAXA, A.C.J.

LEE, J.