## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, ) | No. 74927-7-I |
| ) | |
| Respondent, ) | DIVISION ONE |
| ) | |
| v. ) | |
| ) | |
| DARIN JEROME GATSON, ) | UNPUBLISHED OPINION |
| ) | |
| Appellant. ) | FILED: October 30, 2017 |
| _____ ) | |

BECKER, J. — A security guard was injured by falling down stairs as he was pursuing appellant for shoplifting from a department store. Appellant was convicted of first degree robbery by inflicting bodily injury. He contends he was entitled to an instruction on theft as a lesser included offense. Given the uncontroverted evidence that appellant's conduct was a proximate cause of the guard's fall, the trial court properly concluded a jury could not find theft to the exclusion of robbery. We reject other assignments of error and affirm the conviction.

## FACTS

Gatson stole clothing from a department store on October 4, 2014. A security guard who observed the theft followed Gatson as he left the store. Gatson started running, and the guard gave chase. The guard caught up to

Gatson on a staircase and grabbed him. The guard testified that at the top of the staircase, Gatson "spun around real quick" and "made a thrusting motion real hard" toward the guard's stomach. The guard felt something strike him. He "pushed back" at Gatson and then fell down the stairs. Gatson ran away. The guard sustained a cut and bruise on his stomach and an ankle injury. He told police he had been stabbed with a knife.

Gatson was arrested and charged with first degree robbery. First degree robbery requires a showing that the defendant used a deadly weapon, was armed with a deadly weapon, or inflicted bodily injury. RCW 9A.56.200. The information alleged that Gatson was armed with a deadly weapon—"a sharp, bladed instrument"—and that he inflicted bodily injury.

The defense position at trial was that Gatson committed theft, not robbery. Gatson did not testify. The guard testified that although he originally believed Gatson stabbed him with a knife, he did not actually see whether Gatson was holding anything when he made the thrusting motion. Accordingly, the prosecutor announced that the State would seek conviction only on the "inflicted bodily injury" prong of first degree robbery.

The jury returned a guilty verdict. Gatson received a 129-month sentence. He appeals from the judgment and sentence.

## THEFT AS A LESSER INCLUDED OFFENSE

Gatson requested an instruction on third degree theft as a lesser included offense. He assigns error to the trial court's refusal of this request.

2

An instruction on a lesser offense is warranted when (1) each of the elements of the lesser offense are necessary elements of the offense charged (the legal prong) and (2) the record, viewed in the defendant's favor, supports an inference that the lesser crime was committed (the factual prong). State v. Workman, 90 Wn.2d 443, 447-48, 584 P.2d 382 (1978); see also RCW 10.61.006. If a jury could rationally find a defendant guilty of the lesser offense and not the greater offense, the jury must be instructed on the lesser offense. State v. Henderson, 182 Wn.2d 734, 736, 344 P.3d 1207 (2015).

Here, as in the trial court, the parties agree that the legal prong is satisfied. The elements of third degree theft are necessary elements of first degree robbery. State v. Herrera, 95 Wn. App. 328, 330 n.1, 977 P.2d 12 (1999). Gatson contends the factual prong of the Workman test was also satisfied.

A person commits theft when he wrongfully obtains or exerts unauthorized control over another's property or services, or the value thereof, with intent to deprive the victim of the property or services. RCW 9A.56.020(1)(a); see also RCW 9A.56.050. A person commits robbery when he "unlawfully takes personal property from the person of another or in his or her presence against his or her will by the use or threatened use of immediate force, violence, or fear of injury to that person or his or her property or the person or property of anyone." RCW 9A.56.190. First degree robbery, unlike theft, requires proof that the defendant inflicted bodily injury (among other alternatives). RCW 9A.56.200.

The trial court determined that the record lacked evidence from which a jury could rationally find Gatson committed theft to the exclusion of robbery. We

review a trial court's decision regarding the factual prong of the <u>Workman</u> rule for an abuse of discretion. <u>Henderson</u>, 182 Wn.2d at 743.

The staircase had a knobbed railing, and the cut and bruise on the guard's stomach were located near where his badge and radio would have been. Gatson contends a jury did not necessarily have to find that the guard sustained his injuries when Gatson made the thrusting motion; they could find instead that the guard incurred the injuries when he fell down the staircase with his radio and badge pressed against his stomach. In Gatson's view, the possibility of that scenario supports an inference that he did not "inflict" the guard's injuries.

A defendant inflicts bodily injury when his conduct is a proximate cause of the injury. <u>State v. Decker</u>, 127 Wn. App. 427, 429, 111 P.3d 286 (2005), <u>review denied</u>, 156 Wn.2d 1012 (2006). In <u>Decker</u>, a clerk chased after the defendant who had just stolen some items inside a convenience store. The defendant was in the passenger seat of a getaway car. When the clerk leaned in to the open window on the driver side, the defendant grabbed his arm. The clerk flailed about, trying to free himself as the car rolled forward, and was injured. <u>Decker</u>, 127 Wn. App. at 429. This court applied the rule that "criminal liability attaches where the conduct is the actual and proximate cause of the result." <u>Decker</u>, 127 Wn. App. at 432. The evidence was sufficient to support a finding that the defendant inflicted the injury because there was a "direct causal link" between his conduct and the clerk's injuries: If Decker had not grabbed the clerk's arm, the clerk would not have been injured. <u>Decker</u>, 127 Wn. App. at 432.

4

Here, the record establishes that Gatson's conduct—stealing merchandise, running from the guard—led to the encounter on the stairs. Gatson made a thrusting motion towards the guard, causing the guard to push back and then fall down the stairs. When asked what caused him to fall, the guard testified, "Getting struck and trying to push away." This uncontroverted evidence establishes a direct causal link between Gatson's conduct and the guard's injuries; without Gatson's conduct, the guard would not have been injured.

Gatson observes that Decker involved a sufficiency of the evidence claim, for which the record is viewed in the light most favorable to the State. By contrast, we review claims for a lesser instruction in the light most favorable to the defendant. Henderson, 182 Wn.2d at 736. Nevertheless, Gatson's argument that the word "inflict" requires a more precise causal connection than the word "cause" is analogous to the argument this court rejected in Decker. The encounter at the top of the stairs was undisputed. Under Decker, a jury hearing the evidence in this record could not rationally find that Gatson committed theft without also finding that he inflicted bodily injury.

Decker employed the familiar definition of proximate cause as "'a cause which in direct sequence, unbroken by any new, independent cause, produces the event complained of and without which the injury would not have happened.'" Decker, 127 Wn. App. at 432, quoting State v. Gantt, 38 Wn. App. 357, 359, 684 P.2d 1385 (1984). Gatson claims that the analysis of proximate cause in Decker

has been substantially undermined by a later Supreme Court decision, State v. Bauer, 180 Wn.2d 929, 329 P.3d 67 (2014).

The defendant in Bauer left his gun on a bedroom dresser in his girlfriend's house. Bauer, 180 Wn.2d at 933. Her son took the gun to his elementary school, where it accidentally discharged and injured another child. Bauer, 180 Wn.2d at 932. The State charged Bauer with assault in the third degree, alleging that, with criminal negligence, he "'cause[d] bodily harm to another person by means of a weapon or other instrument or thing likely to produce bodily harm.'" Bauer, 180 Wn.2d at 932 (alteration in original), quoting RCW 9A.36.031(1)(d). On discretionary review of the trial court's denial of a motion to dismiss, the Supreme Court did not alter the well established rule that tort and criminal situations are exactly alike as to *cause in fact* or, as it is sometimes called, "but for" causation. Bauer, 180 Wn.2d at 936. But the court determined that *legal* cause in criminal cases differs from, and is narrower than, legal cause in tort cases. Bauer, 180 Wn.2d at 940. Analyzed in terms of legal causation, the connection between Bauer's conduct and the child's injuries was too attenuated to support criminal liability. Bauer, 180 Wn.2d at 942.

Bauer's stricter standard for legal causation in criminal cases applies when a defendant's negligent acts were "incapable of causing injury directly." Bauer, 180 Wn.2d at 939. Bauer does not call into question older cases imposing criminal liability when the defendant actively participated in the "immediate physical impetus of harm" and the "initial act was not only intentional,

but felonious, and capable of causing harm in and of itself." Bauer, 180 Wn.2d at 939-40.

> No appellate criminal case in Washington has found legal causation based on negligent acts similar to those in the civil cases above that were incapable of causing injury directly. This is apparent in the facts of the cases cited by the State in support of its argument that it may charge Bauer with third degree assault. For example, in State v. Leech, this court held that an arsonist "caused" the death of a firefighter who responded to the arson fire, despite the fact that the firefighter may have been negligent in his firefighting. 114 Wn.2d 700, 705, 790 P.2d 160 (1990). The arsonist, however, intentionally started the fire—clearly an intentional criminal act capable of causing harm in and of itself. In State v. Perez-Cervantes, we held that a person who stabs another may be liable for the other's death even if drug abuse also contributed to the death. 141 Wn.2d 468, 6 P.3d 1160 (2000). In contrast to this case, that defendant performed an intentional criminal act—stabbing—that directly caused harm. And in State v. Christman, the Court of Appeals applied causation principles to determine that a person who gives illicit drugs to another may be liable for the other's death from overdose even if other drugs from another source also contributed to the death. 160 Wn. App. 741, 249 P.3d 680[, review denied, 172 Wn.2d 1002] (2011). Once again, the initial act was not only intentional, but felonious, and capable of causing harm in and of itself.
>
> Bauer's act of gun ownership, in contrast, is not felonious or criminal. His decision to keep loaded weapons around the house is not, in itself, a crime in this state, either.

Bauer, 180 Wn.2d at 938-39.

Unlike the defendant in Bauer, Gatson committed intentional and felonious acts. He stole merchandise and struck the guard. His conduct was not attenuated from the guard's injuries; it was the immediate physical impetus of harm, like the defendant's conduct in Decker. Accordingly, we conclude nothing in Bauer diminishes the force of the Decker analysis in the circumstances of this case. The trial court correctly denied Gatson's request for a lesser included offense instruction.

## EXPERT WITNESS INSTRUCTION

Gatson contends the trial court erred by giving an expert witness instruction. The instruction provided as follows:

> A witness who has special training, education, or experience may be allowed to express an opinion in addition to giving testimony as to facts.
> You are not, however, required to accept his or her opinion. To determine the credibility and weight to be given to this type of evidence, you may consider, among other things, the education, training, experience, knowledge, and ability of the witness. You may also consider the reasons given for the opinion and the sources of his or her information, as well as considering the factors already given to you for evaluating the testimony of any other witness.

The instruction tracked the pattern instruction in 11 Washington Practice: Washington Pattern Jury Instructions: Criminal 6.51 at 211 (4th ed. 2016). The note on use says, "Use this instruction if requested in a case in which expert testimony has been admitted."

Gatson contends that providing the instruction was error because none of the witnesses were qualified as experts. He argues that because the only witnesses who testified to having special training were police officers, the instruction amounted to an unconstitutional comment on the evidence conveying the judge's opinion "that the police officers were experts *notwithstanding* the fact that they had not been endorsed as such at trial."

We disagree. "A jury instruction that does no more than accurately state the law pertaining to an issue" is not an impermissible comment on the evidence by the judge. State v. Woods, 143 Wn.2d 561, 591, 23 P.3d 1046, cert. denied, 534 U.S. 964 (2001). Gatson does not claim the instruction misstated the law.

There is no reason to believe the jurors understood it as an endorsement of the veracity of the officers. Gatson has not demonstrated it was error to provide the instruction.

## PROSECUTORIAL MISCONDUCT

Gatson alleges three instances of prosecutorial misconduct. He must demonstrate that the conduct was both improper and prejudicial. State v. Lindsay, 180 Wn.2d 423, 431, 326 P.3d 125 (2014).

First, Gatson contends the prosecutor mischaracterized the testimony of a bystander witness. The witness testified that on the day of the crime, she observed a crowd gathered outside the store and saw some kind of commotion, but she "didn't know exactly what was going on." She testified that once she got closer, "a man had stood up and said, 'I've been stabbed.'" The prosecutor argued in closing that the woman saw Gatson strike the guard "with a weapon":

> [She] saw something going on when she was about to cross the street . . . . She saw, and she thought it was goofing off or maybe it was more serious, but she saw that there was something going on. Well, we know what that something was now. She saw the defendant striking [the guard] with a weapon.

The court overruled a defense objection that the prosecutor was arguing facts not in evidence.

The defense objection was well taken. The guard had retreated from his initial impression that he had been stabbed, and the jury heard no other evidence that Gatson had a weapon. On appeal, the State contends the prosecutor's argument should be understood, in context, as merely summarizing the woman's testimony that she did witness the event but she did not realize what was actually

9

happening. The State misses the point. The witness heard the guard say that he had been stabbed, but she did not say she saw a weapon. The prosecutor should not have used language suggesting that the existence of a weapon was a fact. Nevertheless, because the State was by this time proceeding only on the "inflicts bodily injury" prong of first degree robbery, the reference to a weapon had less sting than if the existence of a weapon was a matter to be proved. The trial court gave the jury the usual instruction that argument is not evidence. We conclude the reference to a weapon, though improper, was not prejudicial.

Second, Gatson contends the prosecutor used facts not in evidence to inflame jurors' passion and prejudices. In defense closing argument, counsel for Gatson said that the guard did not suffer "much of an injury." The prosecutor's rebuttal was "Defense counsel said, 'It wasn't much of an injury.' And she's right, there wasn't a knife wound in his throat as he's laying there bleeding out." The court overruled a defense objection to this comment.

Gatson asserts that the comment invoked inflammatory imagery that distracted the jury from its proper function as a rational decision-maker. We disagree. The comment was within the bounds of a proper response to the defense argument.

Third, Gatson contends the prosecutor trivialized the State's burden of proof by describing the reasonable doubt standard as the "exact same" standard used in all criminal trials:

> Defense counsel stood up here and talked at length about the burden of proof, beyond a reasonable doubt. That burden of proof is the exact same burden of proof that is used across the hall, down the hall, in every courtroom on this floor, on every courtroom

on the lower floors, the upper floors, in every courtroom in the state of Washington, in every courtroom across the nation; and it's the exact same standard that has been used since the time our country began. It's the same standard.

Defense counsel objected on the basis that the prosecutor was misstating the law. The objection was overruled, and the prosecutor continued along the same line of argument:

In any criminal case, it is the exact same standard. So, let me be clear on that. What I'm saying is, the standard in a criminal case of beyond a reasonable doubt is the exact same standard in every criminal case, here, Idaho, North Dakota, New York; it's the same one. And that standard, that burden, it's absolutely satisfied by the evidence in this particular case.

Gatson contends the prosecutor's argument compared the reasonable doubt standard to everyday decision making, an approach disapproved in Lindsay. In that case, the prosecutor explained the reasonable doubt standard with a narrative about approaching a crosswalk and seeing a car coming: "'He has the red light, you've got a walk sign, you look at him, he sees you, he's slowing down, he nods and you start walking. You're walking because beyond a reasonable doubt you're confident you can walk across that crosswalk without getting run over.'" Lindsay, 180 Wn.2d at 436. The challenged comments here are not analogous to the crosswalk narrative in Lindsay.

Gatson contends the prosecutor was arguing that the jury should not hesitate to bring in a guilty verdict because other defendants have been routinely convicted under this standard all over the country. We do not find that message conveyed in the challenged comments. They are reasonably viewed as a response to defense counsel's explanation of the reasonable doubt standard as

11

"the highest burden of proof in our legal system" and the State's "awesome burden of proof."

In summary, none of the instances of alleged prosecutorial misconduct provide a basis for reversal.

STATEMENT OF ADDITIONAL GROUNDS

Gatson filed a statement of additional grounds as allowed by RAP 10.10. One ground relates to an implied element of the charge. An essential, implied element of first degree robbery is that the victim had an ownership, representative, or possessory interest in the property taken. State v. Richie, 191 Wn. App. 916, 919, 924, 365 P.3d 770 (2015). Gatson questions whether the State proved this element.

The evidence provided no basis for the jury to find that the victim, the security guard, was acting in any other capacity than as an employee of the department store when the crime occurred. The guard was conducting routine video surveillance when he observed Gatson take the merchandise; he then followed Gatson while staying in radio contact with his supervisor; he identified himself outside the store as a loss prevention officer. This is sufficient evidence of a connection between the guard and the stolen property to sustain the robbery conviction. Richie, 191 Wn. App. at 926.

The implied element was not included in the to-convict instruction. But omission of an essential element from a to-convict instruction is harmless if uncontroverted evidence supports the omitted element. State v. Brown, 147 Wn.2d 330, 340-41, 58 P.3d 889 (2002). Here, the uncontroverted evidence

summarized above established the guard's representative interest in the stolen property and rendered the error harmless. Further review is not warranted.

Gatson's statement of additional grounds also alleges that by withholding or failing to preserve a radio, badge, belt, and sweatshirt worn by the guard when the robbery occurred, the State violated Brady v. Maryland, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963). Gatson derives this allegation from trial counsel's argument that the State's failure to keep these items demonstrated weakness in the State's proof. The State violates due process by suppressing evidence favorable to an accused upon request when the evidence is material either to guilt or punishment. Brady, 373 U.S. at 87. Because the record does not show that evidence was "suppressed" within the meaning of Brady, further review is not warranted.

Affirmed.

_Becker, J._

WE CONCUR:

_____

_____