FILED
COURT OF APPEALS
DIVISION II

2015 JAN 21 AM 9: 04

STATE OF WASHINGTON

BY_____
        DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON | No. 44643-0-II |
| Respondent, | |
| v. | |
| SANDY LYNN FEHR | PUBLISHED OPINION |
| Appellant. | |

WORSWICK, P.J. — Sandy Fehr appeals her convictions and sentences for three counts of delivery of methamphetamine, each with a sentencing enhancement for occurring within 1,000 feet of a school bus route stop,[1] and one count of possession of methamphetamine.[2] Fehr argues that the trial court erred by (1) admonishing Fehr to not show responses to the testimony, (2) deciding whether to replay an admitted recording to the jury without Fehr being present, and (3) providing the jury with special verdict forms that misstated the law regarding the sentencing enhancements. We affirm Fehr's four convictions. But because the trial court provided the jury

---

[1] Former RCW 69.50.401 (2005); RCW 9.94A.533(6); RCW 69.50.435(1)(c).

[2] RCW 69.50.4013(1).

with special verdict forms that relieved the State of its burden to prove every element of the law authorizing the school bus route stop sentencing enhancements, we reverse Fehr's three school bus stop sentencing enhancements and remand for further proceedings consistent with this opinion.

## FACTS

After Sandy Fehr sold methamphetamine from one house on three separate occasions, the State charged her with three counts of unlawful delivery of methamphetamine, each with a 24-month sentencing enhancement for delivering the methamphetamine within 1,000 feet of a school bus route stop. The State also charged Fehr with one count of possession of methamphetamine.

A.    *Trial Court's Admonishment to Fehr*

On the first day of trial and prior to voir dire, the trial court gave Fehr the following admonishment:

> [Trial Court]: All right. Witnesses will be excluded then until they are called. So, Ms. Fehr, just want to make sure that, you know, because you're in custody so it's a little—you don't have the same kinds of issues, just make sure not to have any contact with any of the jurors if they try to come over and talk to you or anything.
> [Fehr]: Yeah.
> [Trial Court]: *And then make sure you don't show any disagreement, agreement or any responses to the testimony. All right.* The other thing just so you know, once we do get a jury in—impaneled, we're very careful about making sure that once you exit here that you're not crossing paths, so—
> [Fehr]: Oh, yeah.
> [Trial Court]: So just to—to let you know that as well. Okay. All right.

1 Verbatim Report of Proceedings (VRP) at 6-7 (emphasis added).

B.    *Trial Testimony*

At trial, police informant Connie Barnett testified. Barnett had engaged in three separate "controlled buys," where the detectives orchestrated Barnett's purchase of methamphetamine from Fehr at the house. 2 VRP at 180. During the second controlled buy, Barnett wore a wire intercept device, which produced an unclear recording of the second controlled buy. This recording was admitted as an exhibit and played for the jury during Fehr's trial.

C.    *Special Verdict Forms, Jury Deliberations, and Verdict*

After the parties rested, the jury received three special verdict forms; one for each delivery count's school bus route stop sentencing enhancement. Each special verdict form asked the jury the following interrogatory:

> Did the defendant deliver a controlled substance to a person within one thousand feet of a *school bus stop route* designated by a school district?

Clerk's Papers (CP) at 61-63 (emphasis added). This interrogatory asked whether Fehr delivered within 1,000 feet of a school bus route, rather than a school bus stop.

During the jury's deliberations, the jury requested an opportunity to rehear the admitted wire intercept recording from Barnett's second controlled buy. In a proceeding attended by trial counsel and the prosecutor, but not Fehr herself, the trial court ruled that the jury could rehear the wire intercept recording. Neither trial counsel nor the State challenged this ruling. The trial court offered to have Fehr participate in the proceeding. Trial counsel neither objected nor affirmatively consented to continuing without Fehr's presence.

The jury found Fehr guilty as charged. The jury also answered "yes" on all three special verdict forms, which allowed for a school bus route stop sentencing enhancement on each delivery count.

D.   *Sentencing*

The trial court calculated Fehr's offender score to be 13. The trial court calculated the standard sentence range, without enhancements, at 60 to 120 months for each delivery conviction. The trial court then added the mandatory 24-month school bus route stop sentencing enhancement to each delivery conviction, resulting in a total standard range of 84 to 144 months' imprisonment for each delivery conviction. The trial court calculated the standard range for the possession conviction at 12 to 24 months.

For each delivery count, the trial court imposed 144 months' imprisonment; composed of a 120-month base sentence and a 24-month school bus route stop sentencing enhancement. For the possession count, the trial court imposed 24 months' imprisonment. Each delivery count's 120-month base sentence, and the possession count's 24-month sentence, ran concurrently. But each delivery count's 24-month school bus route stop sentencing enhancement ran consecutively to each delivery count's base sentence, the possession count's sentence, and the other two school bus route stop sentencing enhancements. This resulted in a total sentence of 192 months' imprisonment. Fehr appeals.

## ANALYSIS

### I. ADMONISHMENT NOT TO SHOW RESPONSES TO TESTIMONY

Fehr argues for the first time on appeal that the trial court's admonishment directing Fehr to "make sure [she did not] show any disagreement, agreement, or any responses to the testimony," prevented her from communicating with trial counsel in violation of Fehr's rights to be present, to appear and defend in person, to due process, and to confront adverse witnesses. Br. of Appellant at 11. The State argues that we should not consider these arguments because

Fehr failed to show how the alleged error actually affected her rights at trial. We agree with the State.

Fehr did not object to the trial court's admonishment at trial. Generally, we will not review claims of error that were not presented to the trial court, but an exception exists where the claim of error constitutes a "manifest error affecting a constitutional right." RAP 2.5(a)(3). We use a three-part analysis to determine whether an issue raised for the first time on appeal can benefit from RAP 2.5(a)(3)'s manifest constitutional error exception. *State v. Grimes*, 165 Wn. App. 172, 185, 267 P.3d 454 (2011).

First, the appellant bears the burden of showing that the alleged error was "'truly of constitutional dimension.'" 165 Wn. App. at 186 (quoting *State v. O'Hara*, 167 Wn.2d 91, 98, 217 P.3d 756 (2009)). Second, the appellant must show that the alleged error was "'manifest.'" 165 Wn. App. at 186 (quoting *O'Hara*, 167 Wn.2d at 98). It is not sufficient for the appellant to "simply assert that an error occurred at trial and label the error 'constitutional.'" 165 Wn. App. at 186. Instead, "'the appellant must identify a constitutional error and show how the alleged error actually affected the [appellant]'s rights at trial.'" *State v. Gordon*, 172 Wn.2d 671, 676, 260 P.3d 884 (2011) (alteration in original) (internal quotation marks omitted) (quoting *O'Hara*, 167 Wn.2d at 98). Finally, once an appellant makes this requisite showing, the burden shifts to the State to prove the error harmless beyond a reasonable doubt. *Grimes*, 165 Wn. App. at 186.

Fehr argues that the trial court's admonishment prevented her from communicating with trial counsel in violation of many constitutional provisions. But Fehr does not show, and neither the statement itself nor the record reveals, how this admonishment actually prevented her from

No. 44643-0-II

communicating with trial counsel. Because Fehr fails to show how the alleged error actually affected her rights at trial, she fails to show a manifest constitutional error. Therefore, we do not consider this argument on appeal.

## II. CONSTITUTIONAL RIGHTS TO PRESENCE AT TRIAL

Fehr argues that the trial court violated her state and federal constitutional right to be present at trial because the trial court decided whether to replay the wire intercept recording for the jury at a proceeding where trial counsel, but not Fehr herself, was present. We disagree.

Whether the trial court's actions have violated a defendant's constitutional right to be present is a question of law that we review de novo. *State v. Irby*, 170 Wn.2d 874, 880, 246 P.3d 796 (2011).

A.   *United States Constitution's Right To Be Present at All Critical Stages of Trial*

The due process clause of the Fourteenth Amendment to the United States Constitution grants a criminal defendant "a fundamental right to be present at all critical stages of a trial." *Irby*, 170 Wn.2d at 880. Washington courts have "routinely analyzed alleged violations of the right of a defendant to be present by applying federal due process jurisprudence." 170 Wn.2d at 880. Under this test, a defendant does not have a constitutional right to be present at proceedings involving purely legal or ministerial matters unless those matters require the resolution of disputed facts. 170 Wn.2d at 880-81; *State v. McCarthy*, 178 Wn. App. 90, 98, 312 P.3d 1027 (2013).

Here, the proceeding in question involved a purely legal matter that did not require the resolution of disputed facts: whether the law allowed the jury to rehear the wire intercept

6

recording that had been previously admitted and heard by the jury. Thus, Fehr did not have a right under the United States Constitution to be present at the proceeding in question.

B. *Washington State Constitution's Right To Appear and Defend in Person*

Article I, section 22 of the Washington State Constitution states that "[i]n criminal prosecutions the accused shall have the right to appear and defend in person." Washington courts have recognized that a defendant's right to "'appear and defend'" in person under the Washington State Constitution may be broader than the federal right to be present. *Irby*, 170 Wn.2d at 885 n.6; *State v. Jones*, 175 Wn. App. 87, 107, 303 P.3d 1084 (2013). The Washington State Constitution's right to appear and defend in person applies "at any time during trial that a defendant's substantial rights may be affected." *Jones*, 175 Wn. App. at 107.

Here, the only issue discussed at the proceeding in question was whether the law allowed the jury to rehear the wire intercept recording, which had previously been admitted and played for the jury during trial in Fehr's presence. Thus, Fehr had an opportunity to challenge the recording's admissibility and substance during the State's presentation of the evidence. We hold that where audio evidence was admitted at trial and played to the jury with the defendant present, a subsequent proceeding to determine whether to replay that audio evidence during jury deliberations is not a time during trial where the defendant's substantial rights may be affected. Thus, the Washington State Constitution's right to appear and defend in person does not apply to such a proceeding and this argument fails.

### III. SPECIAL VERDICT FORMS

Fehr further argues that the three special verdict forms erroneously asked whether Fehr delivered methamphetamine within 1,000 feet of a school bus route, rather than a school bus

stop, and that the harmless error analysis does not apply because automatic reversal of the special verdict is required. The State concedes that the special verdict forms were erroneous, but it argues that harmless error review applies. We agree with Fehr.

A.   *Standard of Review*

We review a trial court's decision regarding a special verdict form under the same standard we apply to decisions regarding jury instructions. *See State v. Barnes*, 153 Wn.2d 378, 382, 103 P.3d 1219 (2005). We review alleged errors of law in jury instructions de novo. 153 Wn.2d at 382. "Jury instructions are proper when they permit the parties to argue their theories of the case, do not mislead the jury, and properly inform the jury of the applicable law." 153 Wn.2d at 382. We consider instructions as a whole and read the challenged portions in context. *State v. Hayward*, 152 Wn. App. 632, 642, 217 P.3d 354 (2009).

Automatic reversal is required when an omission or misstatement in a jury instruction "relieves the State of its burden to prove every element of a crime." *State v. Brown*, 147 Wn.2d 330, 339, 58 P.3d 889 (2002). In this context, the term "every" means each and every; the error in a jury instruction requires automatic reversal only when the trial court fails to instruct the jury on *all* the essential elements of the offense. *See State v. DeRyke*, 149 Wn.2d 906, 912, 73 P.3d 1000 (2003). Likewise, error in a special verdict form requires automatic reversal only when the trial court fails to instruct the jury on *all* the essential elements of the special verdict. *See State v. Mills*, 154 Wn.2d 1, 9, 109 P.3d 415 (2005) ("[F]acts which are necessary to impose a greater sentence are 'the functional equivalent of an element of a greater offense.'") (internal quotation marks omitted) (quoting *Ring v. Arizona*, 536 U.S. 584, 609, 122 S. Ct. 2428, 153 L. Ed. 2d 556

(2002)). If automatic reversal is not required, the claim of error is subject to harmless error analysis. *See State v. Coristine*, 177 Wn.2d 370, 380, 300 P.3d 400 (2013).

B.    *Application*

Under RCW 69.50.206(d)(2), "methamphetamine" is a "controlled substance." RCW 69.50.401(1) states in part:

> [I]t is unlawful for any person to manufacture, deliver, or possess with intent to manufacture or deliver, a controlled substance.

RCW 69.50.435(1) states in part:

> Any person who violates RCW 69.50.401 by manufacturing, selling, delivering, or possessing with the intent to manufacture, sell, or deliver a controlled substance . . . to a person . . . (c) [w]ithin one thousand feet of a school bus route *stop* designated by the school district . . . may be punished by . . . imprisonment of up to twice the imprisonment otherwise authorized by this chapter.

(Emphasis added.)

RCW 9.94A.533(6) states in part:

> An additional twenty-four months shall be added to the standard sentence range for any ranked offense involving a violation of chapter 69.50 RCW if the offense was also a violation of RCW 69.50.435 . . . . All enhancements under this subsection shall run consecutively to all other sentencing provisions, for all offenses sentenced under this chapter.

Here, Fehr received three mandatory school bus route stop sentencing enhancements: one for each of three special verdict forms. Each of these special verdict forms determined only one question: whether Fehr violated RCW 69.50.435(1)(c). RCW 69.50.435(1)(c) contains only one element: whether Fehr's delivery occurred within 1,000 feet of a school bus route stop. But instead of asking the jury whether Fehr's delivery occurred within 1,000 feet of a school bus route stop, each special verdict form erroneously asked the jury whether Fehr's delivery occurred within 1,000 feet of a school bus route. Thus, the three erroneous special verdict forms removed

9

the State's burden of proving the one and only element of RCW 69.50.435(1)(c): whether Fehr's delivery occurred within 1,000 feet of a school bus stop.

Because the three erroneous special verdict forms removed the State's burden of proving the one and only element of RCW 69.50.435(1)(c), they relieved the State of its burden to prove each and every element of RCW 69.50.435(1)(c). Thus, harmless error does not apply, and automatic reversal of the three special verdicts is required. Because the special verdicts required the trial court to sentence Fehr to three mandatory 24-month sentencing enhancements, Fehr's sentences must be reversed.

We affirm Fehr's four convictions but reverse her sentences on the three delivery convictions, and remand for further proceedings consistent with this opinion.[3]

_____
Worswick, P.J.

We concur:

_____
Lee, J.

_____
Sutton, J.

_____

[3] Fehr also argues that trial counsel provided ineffective assistance by failing to reference RCW 9.94A.535(1)(g) to request an exceptional sentence below the standard range's minimum sentence. Because we reverse Fehr's sentence on other grounds and because Fehr would be entitled to request an exceptional downward sentence at a future sentencing hearing, we do not consider this issue.