IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 34536-0-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | PUBLISHED OPINION |
| | ) | |
| SKYLER K. TODD, | ) | |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, A.C.J. — Skyler K. Todd appeals his second degree robbery

conviction. He argues the to-convict instruction was deficient for excluding an essential

element of robbery, and the trial court violated his constitutional right to a unanimous jury

verdict by not giving a unanimity instruction. We disagree and affirm.

FACTS

*Factual background*

On September 6, 2015, Mr. Todd entered a Home Depot store located in Spokane,

Washington. Two Home Depot loss prevention employees, Nathaniel Terrell and Brent

Doan, were present and on duty at the time. The two employees were dressed in plain

clothes to blend in with regular shoppers, but each wore an identification badge on their

hip to display when making a stop. Mr. Todd immediately attracted the attention of the employees because he entered the store at a fast pace, was wearing noticeably baggy clothing, and walked immediately to the high theft area of the store. Mr. Terrell and Mr. Doan began watching Mr. Todd closely.

Mr. Todd stopped and grabbed an expensive Leatherman brand knife off a shelf. He tore open the packaging and placed the knife into one of his pockets. Mr. Todd immediately began to walk back toward the store entrance and passed the self-checkout area of the store without stopping at any of the self-checkout stands. Mr. Doan and Mr. Terrell positioned themselves to intercept him at the doors.

As Mr. Todd reached the doors Mr. Doan stepped in front of him and said, "'Excuse me.'" Report of Proceedings (RP) at 157. Mr. Todd turned around and saw Mr. Terrell, who was holding up his identification badge. Mr. Todd immediately began running to escape the two employees.

Mr. Todd ran into Mr. Doan and pushed past him. The employees stopped Mr. Todd as he was attempting to jump on a pallet of concrete. Mr. Todd grabbed Mr. Doan's shirt and ripped it, knocked Mr. Doan's glasses off, and scratched Mr. Doan's hand. Another customer, Jeremy Proctor, approached at this time and helped the two employees subdue Mr. Todd. At an undetermined point—but after the men began to subdue Mr.

Todd—the Leatherman fell out of Mr. Todd's pocket onto the ground. Throughout the scuffle, the two employees identified themselves to Mr. Proctor and Mr. Todd as asset protection employees for Home Depot. The employees recovered the Leatherman, detained Mr. Todd, and called law enforcement.

*Procedural background*

The State charged Mr. Todd with one count of second degree robbery. Mr. Todd did not deny attempting to steal the Leatherman tool. Rather, he contended he did not use force to obtain, retain, or overcome resistance to the taking of the item; but instead used force to escape two assailants, whom he claimed he did not know were Home Depot employees.

The trial court prepared jury instructions based on instructions proposed by the parties. The court's definitional instruction for second degree robbery stated:

> A person commits the crime of robbery in the second degree when he or she unlawfully and with intent to commit theft thereof takes personal property from the person or in the presence of another against that person's will by the use or threatened use of immediate force, violence, or fear of injury to that person. The person from whom the property is taken must have an ownership, representative, or possessory interest in the property taken.
> A threat to use immediate force or violence may be either expressed or implied. The force or fear must be used to obtain or retain possession of the property or to prevent or overcome resistance to the taking, in either of which case the degree of force is immaterial.

3

Clerk's Papers (CP) at 46. The court's to-convict instruction stated in relevant part:

> To convict the defendant of the crime of robbery in the second degree, each of the following elements of the crime must be proved beyond a reasonable doubt:
> (1) That on or about September 6, 2015, the defendant unlawfully took personally [sic] property from the person or in the presence of another;
> (2) That the defendant intended to commit theft of the property;
> (3) That the person from whom the property was taken had an ownership, representative, or possessory interest in the property taken;
> (4) That the taking was against that person's will by the defendant's use or threatened use of immediate force, violence, or fear of injury to that person or to the person or property of another;
> (5) That force or fear was used by the defendant to obtain or retain possession of the property; and
> (6) That any of these acts occurred in the State of Washington.

CP at 47. Mr. Todd did not object to any instruction or take exception to the trial court's failure to give any proposed instruction.

During its deliberations, the jury by written inquiry asked the court to resolve an apparent inconsistency between the definitional and the to-convict instructions. The inquiry asked whether the jury should read the language "'or to prevent or overcome resistance to the taking'" into element 5 of the to-convict instruction. CP at 59. The trial court responded by telling the jury to carefully review all instructions.

4

The jury found Mr. Todd guilty of second degree robbery. Thereafter, the trial court sentenced Mr. Todd to 50 months of confinement and 18 months of community custody. Mr. Todd appealed.

## ANALYSIS

### TO-CONVICT INSTRUCTION

Mr. Todd contends the to-convict jury instruction omitted an essential element of robbery, thus relieving the State from its burden of proving all elements beyond a reasonable doubt and his right to due process. He asserts the instruction omitted the element that force be used to "prevent or overcome resistance to the taking" of property.

This court reviews alleged errors of law in jury instructions de novo. *State v. Fehr*, 185 Wn. App. 505, 514, 341 P.3d 363 (2015). A jury instruction is erroneous if it relieves the State of its burden to prove every element of a crime. *State v. DeRyke*, 149 Wn.2d 906, 912, 73 P.3d 1000 (2003). "A to-convict instruction must contain all essential elements of a crime because it serves as a yardstick by which the jury measures the evidence to determine the defendant's guilt or innocence." *State v. Richie*, 191 Wn. App. 916, 927, 365 P.3d 770 (2015). "The fact that another instruction contains the missing essential element will not cure the error caused by the element's absence from the to-convict instruction." *Id.* at 927-28.

The State first argues that Mr. Todd failed to preserve the alleged error with an objection. We disagree. "[T]he omission of an element of a charged crime is a manifest error affecting a constitutional right that can be considered for the first time on appeal." *Id.* at 927.

The State next argues that the to-convict instruction included all elements of the crime. We agree.

Robbery contains both statutory and nonstatutory elements. There are three statutory elements; the first two read:

> A person commits robbery when he or she [1] unlawfully takes personal property from the person of another or in his or her presence against his or her will [2] by the use or threatened use of immediate force, violence, or fear of injury to that person or his or her property or the person or property of anyone.

RCW 9A.56.190. In describing the offender's purpose for using force, the statute provides: "Such force or fear must be used to obtain or retain possession of the property, or to prevent or overcome resistance to the taking." Some authorities do not list the preceding sentence as an element, but our Supreme Court has in previous opinions. *Cf. State v. Ralph*, 175 Wn. App. 814, 824, 308 P.3d 729 (2013) *and State v. Truong*, 168 Wn. App. 529, 537, 277 P.3d 74 (2012) *with State v. Allen*, 159 Wn.2d 1, 9, 147 P.3d 581 (2006). We, therefore, consider this to be a third statutory element.

6

There are two nonstatutory elements. One is intent to commit theft. *Allen*, 159 Wn.2d at 9 n.3. Another is that the victim have an ownership, representative, or possessory interest in the property taken. *Richie*, 191 Wn. App. at 924.

Here, the trial court's to-convict instruction included the three statutory elements and the two nonstatutory elements. Although the to-convict instruction omitted the phrase, "prevent or overcome resistance to the taking," the State did not argue this means for this particular element. We conclude that the to-convict instruction properly set forth all five elements of second degree robbery.

UNANIMITY INSTRUCTION

Mr. Todd next contends that the trial court denied his constitutional right to a unanimous jury verdict by failing to require the jury to be unanimous when it was instructed on an alternative means crime.

Criminal defendants in Washington have a right to a unanimous jury verdict. WASH. CONST. art. I, § 21; *State v. Ortega-Martinez*, 124 Wn.2d 702, 707, 881 P.2d 231 (1994). "[T]he right to a unanimous verdict is derived from the fundamental constitutional right to a trial by jury and thus may be raised for the first time on appeal." *State v. Handyside*, 42 Wn. App. 412, 415, 711 P.2d 379 (1985). "The right to a unanimous jury verdict includes the right to express jury unanimity on the means by

which the defendant committed the crime when alternative means are alleged." *State v. Emery*, 161 Wn. App. 172, 198, 253 P.3d 413 (2011), *aff'd*, 174 Wn.2d 741, 278 P.3d 653 (2012).

When a jury is instructed on alternative means of committing an offense, a general verdict of guilty does not raise due process concerns if the record contains sufficient evidence to find the defendant guilty of each means. *State v. Woodlyn*, 188 Wn.2d 157, 162, 392 P.3d 1062 (2017). But where the evidence supports only one means, a court reviewing a constitutional unanimity challenge may not assume that the jury relied unanimously on the supported means. *Id.*

Mr. Todd argues that his right to a unanimous jury verdict was violated not once, but twice. He first argues the instructions were erroneous because they did not require the jury to be unanimous whether the property was taken from "the person of another" or "in his or her presence." RCW 9A.56.190. He next argues the instructions were erroneous because they did not require the jury to be unanimous whether the force used was "to obtain property," or "to retain property." We disagree with both arguments.

A.      *Taking property from the person or from the presence of another*

Here, the to-convict instruction permitted the jury to convict if the property was taken "from the person or in the presence of another." CP at 47. Mr. Todd cites a series

8

of cases holding that taking property "from the person" and "in the presence of another" are alternative means for committing robbery. *See State v. O'Donnell*, 142 Wn. App. 314, 323, 174 P.3d 1205 (2007) (citing *State v. Chamroeum Nam*, 136 Wn. App. 698, 705, 150 P.3d 617 (2007)); *State v. Roche*, 75 Wn. App. 500, 511, 878 P.2d 497 (1994). These cases do not undertake a structured analysis of the alternative means issue, and predate *State v. Peterson*, 168 Wn.2d 763, 230 P.3d 588 (2010) and *State v. Sandholm*, 184 Wn.2d 726, 364 P.3d 87 (2015). In *Peterson* and *Sandholm*, the Washington Supreme Court set forth factors that courts should consider when determining whether a statute creates an alternative means crime. Accordingly, we will analyze the question presented under the more modern framework.

An alternative means crime is one that provides that the criminal conduct proscribed by statute may be proved in a variety of ways. *Peterson*, 168 Wn.2d at 769. Determining which statutes create alternative means crimes is a matter of judicial interpretation, which begins by reviewing the criminal statute. *Sandholm*, 184 Wn.2d at 732. Statutes do not create alternative means simply by using disjunctive language or framework. *Id.* at 734. The inquiry is whether the statute describes distinct acts that amount to the same crime. *Peterson*, 168 Wn.2d at 770. "The more varied the criminal conduct, the more likely the statute describes alternative means. But when the statute

9

describes minor nuances inhering in the same act, the more likely the various

'alternatives' are merely facets of the same criminal conduct." *Sandholm*, 184 Wn.2d at

734.

The pertinent inquiry therefore is whether taking property "from the person" and

"in the presence of another" describe sufficiently distinct acts so that the two constitute

alternative means. Both acts criminalize taking property from another. Whether a person

grabs a wallet from the victim's pocket or in front of the victim's nose, the acts are

similar. We hold that the two types of conduct are sufficiently similar so they do not

constitute alternative means crimes.

### B.    *Purposes for use of force or fear*

Here, the to-convict instruction permitted the jury to convict if the purpose for

using force or fear was "to obtain or retain possession of the property." CP at 47.

The pertinent inquiry is whether "using force or fear to *obtain* possession of

property" and "using force or fear to *retain* possession of property" describe sufficiently

distinct acts so that the two constitute alternative means. Both acts criminalize taking

property from another by use of force or fear. Whether a person uses force or fear to

initially obtain property or to later retain it are similar acts. We hold that the two types of

conduct are sufficiently similar so they do not constitute alternative means crimes.

10

APPELLATE COSTS

Mr. Todd, noting his indigent status, asks this court to exercise its discretion and not impose appellate costs in the event the State substantially prevails. The State has substantially prevailed. The State does not explicitly oppose Mr. Todd's request. The State notes that the trial court found Mr. Todd indigent for purposes of his appeal, admits that it knows of no change in his financial circumstances, and requests this court to "only impose appellate costs in conformity with RAP 14.2 as amended." Br. of Resp't at 30.

RAP 14.2, recently amended, governs the award of appellate costs. The rule generally requires an award of appellate costs to the party that substantially prevails. The rule permits an appellate court, in its decision, to decline an award of appellate costs, or to direct a commissioner or clerk to decide the issue. A commissioner or clerk is precluded from awarding appellate costs if it finds that the defendant lacks the current or likely future ability to pay such costs. If a trial court earlier found that the defendant was indigent for purposes of appeal, that finding continues unless the commissioner or clerk determines by a preponderance of the evidence that the defendant's financial circumstances have significantly improved since the earlier finding.

No. 34536-0-III
*State v. Todd*

A majority of this panel has determined that our commissioner should decide the issue of appellate costs. In the event the State seeks an award of appellate costs, we direct our commissioner to enter an order consistent with RAP 14.2.

Affirmed.

Lawrence-Berrey, A.C.J.

WE CONCUR:

_____ (result only)
Korsmo, J.

_____
Siddoway, J.

12