**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 80807-9-I |
| | ) | |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| RONALD JAMES LINDAHL, | ) | |
| | ) | UNPUBLISHED OPINION |
| Appellant. | ) | |
| | ) | |

MANN, C.J. — Ronald Lindahl appeals his conviction for domestic violence assault in the second degree with aggravating circumstances. He contends that the court denied him of his right to an unbiased jury, that the court should not have enhanced his sentence, and that the court violated his right to present a defense when excluding evidence. We affirm.

<u>FACTS</u>

Lindahl was charged by amended information with assault in the first degree—domestic violence and assault in the second degree—domestic violence against his

Citations and pin cites are based on the Westlaw online version of the cited material.

wife, Cynthia Lindahl.[1]  The second degree assault charge included the aggravating circumstances of injuries substantially exceeding the level of bodily harm necessary to satisfy the elements of the crime.  Testimony at trial established the following.

Lindahl and Cynthia married in 2002.  Both Lindahl and Cynthia suffered from alcohol addiction.  Lindahl had a history of being physically violent to Cynthia when drunk.  In 2013, Cynthia called the police after Lindahl hit her in the face.  Lindahl was convicted of assault in the fourth degree and the court ordered him to undergo alcohol treatment and anger management.

In 2012, Cynthia attempted to commit suicide and stabbed herself in the stomach with a butcher knife.  Lindahl sought help from their neighbor, a former nurse named Virginia Thorsvig.  "Ashamed," Cynthia initially told Thorsvig that Lindahl stabbed her.  However, Cynthia later told police her wound was self-inflicted and Lindahl was not arrested.

On January 6, 2018, Cynthia called Thorsvig, and left her a message, stating that she had a head injury, and requested Thorsvig call 911, which she did.  Police conducted a welfare check on the Lindahl residence, and noticed that Cynthia had redness and bruising under her left eye, and bruising on her left arm.  When questioned by police, Lindahl told officers that Cynthia was always falling and had fallen in the bedroom the previous week.  Cynthia declined medical attention and the officers left.

On January 9, 2018, Cynthia came to Thorsvig's door and asked her to call her daughter.  Cynthia was bruised and barefoot.  Police arrived at the Lindahl residence,

---

[1] Because the parties share the same surname, this opinion refers to Cynthia by her first name. No disrespect is intended.

finding the house in disarray. Cynthia had a bruised, swollen face, and additional bruising on her body. Cynthia had significantly more injuries than she had on January 6. Medics treated Cynthia and she told them she was too scared to say something to the medics on January 6.

Cynthia then went to the hospital and told hospital staff that her husband assaulted her. Cynthia said Lindahl kicked the back of her head and punched her in the face. Doctors determined that Cynthia had two black eyes and bruising across her nose. After a computed tomography (CT) scan, doctors determined that she had a subdural hematoma, bleeding under the skull, which can be life threatening. The bleeding had moved her brain 8 millimeters, which can result in brain damage or death. Cynthia also had a dislocated, fractured shoulder, and bruising on her arms and legs.

After suffering a seizure, Cynthia was transferred to Harborview Medical Center (Harborview) where she underwent a craniotomy, and doctors discovered two subdural hematomas, caused from a combination of acute and chronic bleeding. At Harborview, Cynthia also underwent facial surgery to repair her nose which had been crushed in five places.

While Cynthia initially told police that she fell and hurt herself, she later reported and testified at trial that over the course of several days, Lindahl brutally assaulted her. Lindahl began assaulting Cynthia after she jokingly told Lindahl she was having an affair with a celebrity. He slammed her head into the kitchen cupboards about 10 times, pushing her head into the drawer handle. Lindahl then kicked her into the door, and then kicked her down two stairs onto a cement floor. Cynthia said she did trip and fall in the bedroom during the course of the assault. After Cynthia fell, Lindahl proceeded to

pound her head into the dresser until she fell onto the floor. Lindahl tried to drag Cynthia up, giving her a bad carpet burn. Frustrated that Cynthia was unable to get up, Lindahl stomped and kicked her as she lay on the floor for days. She was unable to move and soiled herself. Finally, Cynthia mustered the strength to run to Thorsvig's house for help.

Police arrested Lindahl on January 9, 2018. After being read his Miranda[2] rights, Lindahl provided police with a written statement saying that after Cynthia told him she cheated on him, they were drinking, and she fell four times onto the kitchen stove and table. During the course of the interview with the officer, Lindahl said both "I didn't do anything," and "I'm guilty." He said he did not seek medical help for Cynthia because he was afraid of being arrested. Police photographed bruising and scrapes on Lindahl's chest, bruising on his elbow, and a scrape on his nose.

On January 10, 2018, Detective John Free interviewed Lindahl. Lindahl said that both he and Cynthia were drinking, she said she had an affair, and it "just got ugly." Lindahl alternated between denying hitting Cynthia and saying she fell and hit her head, to admitting he "must have done something." He did admit he hit Cynthia, but he characterized it as "shoving and pushing." Lindahl wrote a letter to Cynthia at Detective Free's suggestion, where he said: "So sorry for what happened. I should have never hit or kicked you. I love you so much. Please forgive me. I do love you and you do deserve much better."

---

[2] Miranda v. Arizona, 384 U.S. 436, 444, 86 S. Ct. 1602, 1612, 16 L. Ed. 2d 694 (1966).

From late February to early March, Lindahl left repeated voicemails on Cynthia's phone, which she gave to police. Lindahl alternated between professing his love for Cynthia, begging her to call him, and threatening her and cursing at her.

Pretrial, the defense moved to introduce three instances of Cynthia's self-harm: two instances of Cynthia shooting herself in 1984 and 1996 before she met Lindahl, and the 2012 stabbing incident. After a lengthy ER 404(b) analysis on the record, the court allowed the defense to introduce evidence of the 2012 stabbing, but tentatively excluded evidence of the shooting incidents, based on the remoteness in time and minimal probative value.[3]

At trial, Cynthia testified about the assault in detail and the lasting brain damage she suffered as a result. Lindahl denied hitting Cynthia, instead claiming she fell repeatedly and ran into items while drunk, and she kicked him. A defense hired pathologist testified that subdural hematomas are more common in elderly people and alcoholics, and concluded that Cynthia's injuries could have been caused either by someone accidentally falling and striking their head, or having their head intentionally slammed into a fixed object.

The court played Lindahl's recorded interview with Detective Free for the jury. The court admitted over 20 voicemails that Lindahl left for Cynthia between February 23, 2018 and March 5, 2018.

---

[3] At the conclusion of the ER 404(b) hearing, the trial court concluded: "given the remoteness in time and the lack of information I have about it, . . . I think it's got minimal probative value to the defense—that I would not allow it in. But I'm going to let you get more information about this if you want. And if you want, we can actually hear testimony outside the presence of the jury about these incidents so that I can have more information about it to make that decision. But . . . my inclination at this point is to exclude that evidence based on a 404(b) analysis."

The jury found Lindahl not guilty of assault in the first degree, but guilty of assault in the second degree. The court imposed an upward exceptional sentence of 48 months based on the jury's special verdict finding that Cynthia's injuries substantially exceeded the level of bodily harm necessary to constitute substantial bodily harm.

Lindahl appeals.

## ANALYSIS

### A. Biased Juror

Lindahl argues that the trial court denied him his right to a fair trial by denying his motion to remove a juror for cause. We disagree.

We review the trial court's voir dire decisions for an abuse of discretion. State v. Davis, 141 Wn.2d 798, 826, 10 P.3d 977 (2000). "Therefore, absent an abuse of discretion and a showing that the rights of an accused have been substantially prejudiced, a trial court's ruling on the scope and content of voir dire will not be disturbed on appeal." Davis, 141 Wn.2d at 826.

Potential jurors answered a questionnaire to expose any issues with their ability to serve on the jury. Juror 9 noted that she had experience working with domestic violence, and that she might slightly favor the accuser. She answered "yes," to the following question: "Is there a reason that you would be unable to be fair and impartial to both sides in a case involving an accusation of domestic violence," explaining "Having worked in Emergency Room settings with DV victims my experience may bias me in favor of the accuser."

During individual questioning, juror 9 elaborated:

My experience has pretty much entirely been in the domestic violence area, anyway, entirely done working with people who are accusers,

-6-

victims. And so that's been all of my experience in this area. And so my bias is that a person is coming forward to report domestic violence, I think that it's more likely than not that there's something there. So that's just the truth of my bias as I (inaudible) to my—to be as honest as possible in my reaction to that question.

After the trial court explained the role of a juror to juror 9, and explained that she needed to consider only the evidence brought to her in the courtroom without letting her biases interfere, juror 9 said "I would hope that I could do that." The court pressed her further and she answered "Well, I think I can, but I also want to be honest about what I think my leanings might be coming into this. So yes, certainly I do think I have the capacity to do that, Your Honor." After being questioned by defense counsel, and acknowledging her own biases, juror 9 said she could still serve on the case, stating "I also know that coming here as a juror, that I need to listen to the facts as they would be presented to me in the case and make a decision based on that. And I believe that I could do that."

The trial court denied defense counsel's motion to strike juror 9 for cause. Defense counsel then used one of its peremptory challenges[4] to excuse juror 9. Defense counsel used all eight peremptory challenges.

A defendant is guaranteed the right to a trial by an impartial jury under the Sixth and Fourteenth Amendments to the United States Constitution. Davis, 141 Wn.2d at 824. In Washington, this includes the accused's right to an unbiased and unprejudiced jury. Davis, 141 Wn.2d at 824. Seating an actually biased juror is a manifest constitutional error requiring reversal. State v. Irby, 187 Wn. App. 183, 197, 347 P.3d 1103 (2015).

---

[4] The court gave each side eight peremptory challenges.

Actual bias provides a basis to challenge a juror for cause.  State v. Guevara Diaz, 11 Wn. App. 2d 843, 855, 456 P.3d 869 (2020) (quoting RCW 4.44.170(2)).  A juror's "equivocal answers alone do not require a juror to be removed when challenged for cause, rather, the question is whether a juror with preconceived ideas can set them aside."  State v. Noltie, 116 Wn.2d 831, 839, 809 P.2d 190 (1991).

Lindahl contends that because the court denied the for-cause challenge, he was forced to use a peremptory challenge, requiring reversal under the Washington Constitution.  Lindahl urges us to follow State v. Parnell, 77 Wn.2d 503, 508, 463 P.2d 134 (1969) abrogated by State v. Fire, 145 Wn.2d 152, 34 P.3d 1218 (2001).  In Parnell, our Supreme Court held that if a trial court erroneously denies a challenge for cause, thus forcing the defendant to exercise a peremptory challenge to remove the juror, the error is presumptively prejudicial and requires reversal if the defendant subsequently exhausts his or her peremptory challenges.  77 Wn.2d at 508.

Subsequent to Parnell, in United States v. Martinez-Salazar, 528 U.S. 304, 311, 120 S. Ct. 774, 777-80, 145 L. Ed. 2d 792 (2000), the United States Supreme Court held that peremptory challenges "are not of federal constitutional dimension" and the federal constitutional right to an impartial jury is not violated when a trial court denies a challenge for cause and the defendant then uses a peremptory challenge to strike the challenged juror.  Later the same year, Washington explicitly adopted the holding of Martinez-Salazar in State v. Roberts, 142 Wn.2d 471, 517, 14 P.3d 713 (2000).  The court held that "[i]t is well established that an erroneous denial of a challenge for cause may be cured when the challenged juror is removed by peremptory" and that "[s]o long as the jury that sits is impartial, the fact that the defendant had to use a peremptory

-8-

challenge to achieve that result does not mean the Sixth Amendment was violated."
Roberts, 142 Wn.2d at 518.

In Fire, our Supreme Court explicitly abrogated Parnell.[5] A five-justice majority, relying on Martinez-Salazar, held that the erroneous denial of a challenge for cause is not a due process violation under the federal constitution. The majority also addressed the implication that while the defendant "may not have had any grounds for relief under the United States Constitution and federal case law, he does under the Washington Constitution and Washington case law." Fire, 145 Wn.2d at 159. The majority held that there is no difference between the right to an impartial jury guaranteed under the federal constitution and that guaranteed under the Washington constitution, and thus no reason to analyze whether the defendant's state constitutional rights were violated.

> No Washington case has thus far recognized a difference between the right to an impartial jury guaranteed under the federal constitution and that guaranteed under the Washington constitution . . . Thus, Washington law does not recognize that article I, section 22 of the Washington State Constitution provides more protection than does the Sixth Amendment to the United States Constitution. Hence, Martinez-Salazar defines the scope of a defendant's right to an impartial jury in this situation.

Fire, 145 Wn.2d at 163.[6]

---

[5] Justice Alexander concurred with the result in Fire. He wrote a separate concurring opinion to state his belief that Parnell had not been tacitly abandoned, as the majority suggested, but instead remained good law up until Fire.

[6] Subsequent cases addressing the issue have followed the reasoning in Fire. See, e.g., Hill v. Cox, 110 Wn. App. 394, 410, 41 P.3d 495 (2002) ("[E]ven if a juror should have been excused for cause, once a peremptory challenge is exercised, some showing that a biased juror actually sat on the case is required."); State v. Yates, 161 Wn.2d 714, 746, 168 P.3d 359 (2007) abrogated by State v. Gregory, 192 Wn.2d 1, 427 P.3d 621 (2018) ("[W]here a defendant exercises a peremptory challenge after the court denies a defense motion to excuse the juror for cause, any potential violation of the defendant's Sixth Amendment right to an impartial jury is cured."); In re Pers. Restraint of Stockwell, 160 Wn. App. 172, 181, 248 P.3d 576 (2011) ("As long as the selected jury is impartial, the fact that Stockwell had to use a peremptory challenge to ensure that result does not violate his right to an impartial jury."); State v. Clark, 170 Wn. App. 166, 194, 283 P.3d 1116 (2012) ("A defendant must demonstrate prejudice as a result of the court's failure to strike a juror for cause . . . If the challenged juror did not ultimately sit on the jury, the defendant cannot show prejudice."); State v. Schierman, 192 Wn.2d 577, 632, 438 P.3d 1063 (2018) ("Where a trial court erroneously denies a defendant's for-cause challenge and the defendant is

Lindahl argues that Fire was based on federal constitutional law and therefore did not consider that the Washington Constitution guarantees greater protection. But the majority in Fire was clear that there is no difference between the right to an impartial jury guaranteed under the federal constitution and that guaranteed under the Washington constitution.[7] Fire, 145 Wn.2d at 163. And Lindahl cites no cases in support of the proposition that the state constitutional right to a fair and impartial jury in article I, section 21 and 22 is greater than that afforded under the Sixth Amendment. See, e.g., State v. Munzanreder, 199 Wn. App. 162, 174, 398 P.3d 1160 (2017) ("In nearly 100 years, our state has yet to recognize any state or local concern with respect to a defendant's right to an impartial jury that would justify

---

forced to use a peremptory challenge to cure the trial court's error, his rights are not violated so long as he is subsequently convicted by a jury on which no biased juror sat.").

[7] Justice Alexander joined in this result, and also separately wrote that the state constitutional right to a fair and impartial jury was co-extensive with the federal right:

> The Court's decision in Martinez-Salazar makes perfect sense to me and is a far better rule than that which we enunciated in Parnell. More importantly, the rule does not trample on any constitutional rights guaranteed by the Sixth Amendment to the United States Constitution or Washington Constitution article I, sections 21, 22 . . .

> The language of article I, section 22 of our state constitution is similar to that of the Sixth Amendment and has been construed to ensure and protect one's right to a fair and impartial jury. State v. Davis, 141 Wn.2d 798, 855, 10 P.3d 977 (2000). In addition, Washington Constitution article I, section 21 states that a defendant has a right to be tried by an impartial 12 person jury. State v. Gentry, 125 Wn.2d 570, 615, 888 P.2d 1105 (1995) (applying Wash. Const. art. I, § 21). Neither provision provides that a person has a right to a jury containing a particular juror or jurors. I subscribe to the view that these constitutional rights are not infringed when a defendant exercises a peremptory challenge to cure an erroneously denied for cause challenge. Like the United States Supreme Court, I would hold that unless a defendant can show prejudice, the mere fact that one uses his or her peremptory challenge to cure a wrongfully denied for-cause challenge does not establish a constitutional violation.

Fire, 145 Wn.2d at 167.

interpreting article I, section 22 differently than how federal courts have interpreted the Sixth Amendment.").

Fire is binding authority. Because juror 9 did not sit on the jury, Lindahl cannot show that the jury was biased. Further, Lindahl is unable to demonstrate that the trial court abused its discretion in denying the for-cause challenge. While juror 9 did indicate that she had some biases that she was aware of, she clearly told the court that she would be able to set aside those biases and focus on the evidence offered. Ultimately, Lindahl cannot show any prejudice with his jury warranting reversal.

B. Enhanced Sentence

Lindahl next argues that the trial court erred in enhancing his sentence because the verdict form does not properly instruct the jury on the aggravating circumstances. We disagree.

We review alleged instructional errors de novo. State v. Sibert, 168 Wn.2d 306, 311, 230 P.3d 142 (2010). We review jury instructions and special verdict forms under the same standard. State v. Fehr, 185 Wn. App. 505, 514, 341 P.3d 363 (2015). "Jury instructions are proper when they permit the parties to argue their theories of the case, do not mislead the jury, and properly inform the jury of the applicable law." State v. Barnes, 153 Wn.2d 378, 382, 103 P.3d 1219 (2005). Jury instructions must inform the jury that the State bears the burden of proving every essential element of the crime charged. State v. Johnson, 180 Wn.2d 295, 306, 325 P.3d 135 (2014).

Lindahl objected to the State's proposed instruction for assault in the second degree, specifically challenging the language "Whether the victim's injuries substantially exceeded the level of bodily harm necessary to constitute substantial bodily harm."

The court agreed to modify the instructions, consistent with the defense theory that Cynthia had also injured herself over the days. The court instructed the jury to consider "whether the victim's injuries <u>caused by the defendant</u> substantially exceeded the level of bodily harm to constitute substantial bodily harm." (Emphasis added).

Lindahl did not object to the special verdict form, which states "Did the victim's injuries substantially exceed the level of bodily harm necessary to constitute substantial bodily harm, as defined in these instructions for Count II." Lindahl raised the issue for the first time in the motion for a new trial.

Lindahl has failed to preserve this error on appeal as the special verdict form incorporated the jury instruction that Lindahl requested. "Under the doctrine of invited error, even where constitutional rights are involved, we are precluded from reviewing jury instructions when the defendant has proposed an instruction or agreed to its wording." <u>State v. Winings</u>, 126 Wn. App. 75, 89, 107 P.3d 141 (2005). Even if he had preserved this issue on appeal, the special verdict form correctly states the law because it incorporates the defense instruction specifying that only those injuries caused by the defendant could be considered in determining whether they substantially exceeded the level of bodily harm necessary to constitute substantial bodily harm.

C. <u>Exclusion of Evidence</u>

Lindahl finally argues that the court violated his right to present a defense when it excluded evidence of Cynthia's acts of self-harm that predated their relationship. We disagree.

We review evidentiary decisions for an abuse of discretion. <u>State v. Castellanos</u>, 132 Wn.2d 94, 97, 935 P.2d 1353 (1997). Evidence is relevant if it has "any tendency

to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." ER 401. The trial court considers whether the probative value of prejudicial evidence is outweighed by its prejudicial effect under ER 403. Evidence of other acts are admissible to show an absence of mistake or an accident. ER 404(b). Evidence of an accident is admissible only when the defendant denies the crime, and affirmatively asserts that the victim's injuries occurred by happenstance or misfortune. State v. Roth, 75 Wn. App. 808, 819, 881 P.2d 268 (1994).

When Lindahl moved to admit three instances of Cynthia's self-harm to support his theory that she injured herself under ER 404(b), the court only allowed the defense to introduce evidence of the 2012 stabbing incident. The court reasoned that the shooting incidents were 23 and 35 years ago, they had nothing to do with Lindahl, and had minimal probative value to the defense. The court admitted the 2012 incident as it involved Lindahl, and was applicable to his theory that Cynthia's injuries were self-inflicted.

Lindahl cannot demonstrate that the court abused its discretion by tentatively excluding this evidence based on the limited details Lindahl presented regarding the 1984 accidental shooting incident or the 1996 possible suicide attempt. First, the court made clear that its ruling was only tentative and that Lindahl and his counsel could request an evidentiary hearing to present additional information if they wanted the court to consider admitting that evidence. A defendant waives a challenge to an alleged evidentiary error by failing to seek a final ruling on a tentative ruling on a motion in limine. State v. Riker, 123 Wn.2d 351, 369, 869 P.2d 43 (1994). Here, the court did not

-13-

definitively exclude this evidence. It stated "my inclination at this point is to exclude that evidence based on [an ER] 404(b) analysis."

Second, even if the error were not waived, Lindahl has not demonstrated an abuse of discretion. Both shooting incidents occurred long before Cynthia and Lindahl met, and had nothing to do with their relationship. Lindahl argues that the evidence was relevant because it would overcome a jury's reluctance to believe anyone could harm themselves so seriously and it demonstrated a pattern of self-harming behavior to gain attention. But defense counsel indicated below that the 1984 shooting was accidental and the 1996 shooting may have been a suicide attempt. There is simply insufficient evidence to demonstrate the two incidents proved that Cynthia had a pattern of inflicting injuries on herself to gain attention. And their remoteness in time and lack of connection to Lindahl, or the crime at issue, significantly reduced even further any potential probative value the evidence would have had. Lindahl was able to sufficiently argue his theory that Cynthia injured herself and blamed Lindahl for these self-inflicted injuries through his own testimony and with evidence of the 2012 stabbing incident.

Affirmed.

Mann, C.J.

WE CONCUR:

Chun, J.                          Andrus, A.C.J.

-14-